LEON HUNTER, d/b/a Central Motor Company, Complainant-Appellant, v. R. L. MOORE, Defendant-Appellee.—276 S. W. (2d) 754.

Eastern Section. August 13, 1954.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

534

J. F. Wheless, of Chattanooga, for appellant.

King & Fuston, of Chattanooga, for appellee.

McAMIS, P. J.   This is a replevin action involving a Cadillac automobile which complainant-appellant sold to

T. C. McDonald on August 5, 1952, accepting in payment McDonald's check which was later dishonored. Defendant is a purchaser from McDonald. The Chancellor held defendant a bona fide purchaser for value and without notice and complainant estopped to claim title on the ground that he placed in McDonald's hands a bill of sale purporting to transfer perfect, unencumbered title upon which defendant relied.

Complainant has appealed, insisting that, under the provisions of the Tennessee Motor Vehicle Title and Registration Law of 1951, Chapter 70, Acts of 1951, no title passed to McDonald and that defendant had constructive notice of a defect in title because McDonald had no certificate of title. It is also mildly insisted that McDonald committed larceny and, for that reason, the bill of sale to him is void.

Complainant, an automobile dealer of Nashville, Tennessee, purchased the Cadillac on August 2, 1952, from Earl W. Fletcher, a resident of the State of Georgia. It bore a Georgia license tag but, Georgia being a "non-title" state, no state approved certificate of title was required of the seller in that transaction. A bill of sale, however, was executed by Fletcher to complainant.

On August 5, 1952, complainant was contacted by Tommy Glascock, an automobile salesman of Nashville with whom complainant was acquainted, and advised that T. C. McDonald of Ardmore, Alabama, was in Nashville and desired to buy some automobiles. He described McDonald as an automobile dealer. McDonald was later brought by Glascock to complainant's garage and, after negotiations of several hours duration, complainant agreed to sell McDonald the Cadillac car here involved along with three other cars. McDonald thereupon issued a separate check to complainant for each of the four cars,

all on the Bank of Ardmore. The agreed price of the Cadillac was $3,435.

Complainant testified that the transaction was completed about 11 P.M. of the same day, August 5, 1952; that he agreed to accept the checks but retained title in the sale order signed by McDonald and also retained the bill of sale from Fletcher; that McDonald then stated that he needed a bill of sale for his protection in case he should be stopped on the highway by the police and that he then executed and delivered to McDonald a bill of sale purporting to give him unencumbered title; that he, complainant, felt safe in this because McDonald could not get a certificate of title from the State until after the checks had cleared the Bank and could not sell the car without such certificate.

McDonald immediately drove the Cadillac to Cleveland, Tennessee, and there entered it in a public auction of used cars regularly conducted in Cleveland. It bore a Tennessee "drive-out" tag. At the sale McDonald announced that the Cadillac was a Georgia car or a "no title" car, meaning according to trade usage that it was a car from a state which did not require a state issued certificate of title. Defendant having seen the bill of sale from complainant to McDonald placed the high bid and issued his check to McDonald for $3,275 which has been paid although defendant later attempted without avail to stop payment.

McDonald was represented at the auction, as he had been in Nashville, as a dealer of Ardmore, Alabama. Complainant testified that after the Bank refused payment on the check on August 7, 1952, he made an investigation in the Clerk's office at Ardmore, Alabama, and was unable to find that a dealer's license had ever been

issued to T. C. McDonald. This is the extent of the proof on that question.

In a number of decisions of the Supreme Court and of this court it has been held that where a seller delivers possession along with indicia of perfect title he is estopped "to assert a claim as against a purchaser for value from the one to whom possession plus indicia of title has been given by the true owner." Jackson v. Waller, 190 Tenn. 588, 230 S. W. (2d) 1013, and cases cited.

The soundness of this rule is conceded but, as indicated, it is insisted that it should not apply where the subsequent sale is without a state approved certificate of title, first, because under the statute no title can pass without such certificate and, second, because a purchaser would be guilty of negligence in not requiring a certificate from the seller.

After providing under Section 49 that before operating a vehicle which is subject to the Act, a transferee "shall apply for and obtain a registration and apply for a certificate of title", the Act, Section 50, provides:

"That when the transferee of a vehicle is a dealer who holds the same for resale and lawfully operates the same under dealer's registration plates, such transferee shall *not be required to obtain a new registration of said vehicle* or be required to obtain a new certificate of title * * *."

Complainant, being a dealer, was thus relieved of the necessity of obtaining a certificate of title and the car having been purchased from a non-resident who was not required to have a certificate of title, obviously there was no old certificate upon which to note an assignment to McDonald.

The further provisions of Section 50 require a dealer to transfer title on the certificate of title only if such certificate is in his possession. If it is not in his possession the transfer of title, under the terms of this Section, may be accomplished by an assignment or bill of sale acknowledged before a notary public.

■■ It is our opinion that, under Section 50 of the Act, title passed when complainant executed and delivered a notarized bill of sale to McDonald. It is true this Section contemplates that the dealer in such a situation will transfer along with the bill of sale such muniments of title as the dealer may have but we cannot read into the Act a requirement that such transfer is a condition precedent to a transfer of legal title. The Act being in derogation of the common law, the provisions of this Section relating to transfer of the dealer's muniments of title will be regarded as directory rather than mandatory. See 46 Am. Jur. pp. 227-229, Sales, Sec. 35.

■ If we are correct in holding that legal title passed from complainant to McDonald, it follows that defendant was not negligent in relying upon the bill of sale and that the absence of a certificate of title was not sufficient to deprive him of the rights of an innocent purchaser for value and without notice. The record shows affirmatively that, under then prevailing regulations of the Tennessee Department of Safety, a purchaser under the circumstances here involved could obtain a certificate of title and that defendant in fact did obtain a certificate of title by sending with his application the bill of sale from complainant to McDonald and the bill of sale from McDonald to defendant.

■■ Complainant's final insistence is that McDonald committed larceny in obtaining possession of the car and that, having no title, he could transfer none to defendant.

Code Sections 10923 and 10967, it is said, make McDonald guilty of larceny. We cannot agree. These statutes control where possession is obtained by means of a contract of agency, bailment or the like. In this case possession was obtained by means of a check later dishonored. There was no crime, under Code Section 11157, until after the drawee bank failed to pay and failure of the drawer to pay after written notice. State v. Crockett, 137 Tenn. 679, 195 S. W. 583.

We find no error and the decree is affirmed at complainant's cost.

Hale and Howard, JJ., concur.