Johnnie **GARRETT**, Dorothy **Garrett**, **Linda Garrett**, a minor b/n/f **Johnnie Garrett**, and **Johnnie Garrett**, Father of deceased minor, **Kristy Lynn Garrett**

v.

**AMERICAN MUTUAL LIABILITY IN-SURANCE COMPANY.**

Civ. A. No. 5595.

United States District Court
E. D. Tennessee, N. D.

Oct. 18, 1966.

Richard Stair, Carey E. Garrett, Knoxville, Tenn., for plaintiff.

Jerome G. Taylor, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

On the afternoon of July 25, 1964 a car driven by Roscoe Godsey had a head-on collision with one driven by Johnnie Garrett. Mr. and Mrs. Godsey were killed, the daughter of Mr. Garrett was killed and Garrett and others of his family were injured.

Suit was brought by Garrett and others in the state court against the administrator of the Godsey estate and judgments were awarded against the administrator totalling some $70,000.00.

Suit is brought here on those judgments against the American Mutual Liability Insurance Company. Prior to the accident, defendant insurance company had issued an automobile garage liability policy upon the operations of S. T. Williams doing business as the Cumberland Motor Company, at Crossville, Tennessee.

On the morning of the accident Cumberland had been negotiating with Godsey's wife for the sale to her of the car driven by Godsey at the time of the accident. The parties are in dispute as to whether the sale had been consummated when the car was turned over to the Godseys. If it had not been, the plaintiffs claim that defendant is liable under subsection (3) (a) of the Persons Insured section of Part I, Liability, of the policy

issued by the defendant to Cumberland which was in effect on the date of the accident.

The foregoing subsection reads:

"Each of the following is an insured under Part I, except as provided below:

"(3) With respect to the Automobile Hazard:

"(a) any person while using, with the permission of the named insured, an automobile to which the insurance applies under paragraph 1(a) or 2 of the Automobile Hazards, provided such person's actual operation * * * is within the scope of such permission."

By definition in the policy the Cumberland garage operation covers "an automobile sales agency."

If the sale was not completed and the automobile was driven with the consent of Cumberland, plaintiffs contend that the accident was covered by the policy since the automobile involved in the accident was being used with the consent of the insured, Cumberland Motor Company.

Defendant says that if the car was transferred to the Godseys by Cumberland pursuant to an agreement of sale, liability was precluded under the following exception of the Persons Insured section:

"None of the following is an insured:

*     *     *     *     *     *

"(iii) any person or organization other than the named insured with respect to any automobile * * * (b) possession of which has been transferred to another by the named insured pursuant to an agreement of sale;"

On the morning of the accident Mrs. Godsey appeared at Cumberland Motor Company's place of business in Crossville, Tennessee, for the purpose of purchasing the 1957 Ford two-door automobile bearing license number 58–3606, motor number D7UT–110556. Prior to this appearance she had communicated with the owner, S. T. Williams, and told him in substance that she wanted to purchase a cheaper automobile than the one she owned and wanted to know if she could exchange the one she owned for a cheaper car. Mr. Williams replied in the affirmative.

Pursuant to this understanding, on Saturday, July 25, 1964, she agreed on the terms of purchase and sale with the officials of Cumberland, including Mr. Williams. The agreement was reduced to writing in the form of an invoice in which it was stated that the 1957 Ford automobile was sold to Mabel Godsey for the aggregate sum of $1,263.62. The invoice listed the car that was traded in for the new car, and various other items involved in the consummation of the trade including sales tax, an item of $4.25 for application of title, and the sum of $121.50 which Cumberland paid the holder of the lien against the car that was being traded in. The invoice recited that $40.00 was paid in cash and $350.00 was allowed for the car that was traded in by Mrs. Godsey as a part of the purchase price. In addition to the invoice there was what has been referred to as a house note dated July 25, 1964 in the amount of $7.10.

Wording on the house note that "this note is given for the balance of the purchase price of" was stricken out. The other language in the note is substantially the same as that used in the ordinary conditional sales note. A conditional sales contract was signed by Mabel Godsey in which the figures set forth in the invoice were copied. A bill of sale of the same date in the name of Cumberland Motor Company was signed by S. T. Williams. A copy of the invoice and a copy of the conditional sales contract was delivered to Mrs. Godsey. The remainder of the papers were held by the Cumberland Motor Company with the understanding, according to the oral testimony, that Cumberland was to register the title of Mrs. Godsey's car the following Monday morning with the County Court Clerk and the County Court Clerk was to forward the title papers to Nashville in accordance with usual procedure so that the

title certificate to the car purchased by Mrs. Godsey could be obtained from the State of Tennessee.

Mrs. Godsey paid $40.00 cash at the time she took possession of the automobile or immediately prior thereto and agreed to pay what has been referred to as the house note of $7.10 the following Monday morning. As before indicated, Mrs. Godsey did not live to carry out her promise.

The parties agree that the primary question, if not the sole question for the determination of the Court, is whether ownership to the automobile driven by Godsey at the time of the fatal accident had passed from Cumberland Motor Company to Mrs. Godsey prior to the accident.

■ Plaintiffs, through their counsel, say that it had not. The defendant, through counsel, says that it had. Whether ownership to the car passed to Mrs. Godsey is primarily a question of fact.

. Counsel for plaintiffs argues with vigor that the intention of the parties to the transaction controls and that the circumstances surrounding the transaction show that it was not the intention of the parties that the ownership of the car pass unless and until the $7.10 house note was paid.

■ The Court agrees with counsel that the intention of the parties controls, but does not agree that the passing of ownership depended upon the payment of the $7.10 note. Counsel for plaintiffs says that the following factors show that it was the intention of the parties that ownership of the car not pass to Mrs. Godsey:

(a) After the fatal accident Cumberland Motor Company took charge of that which was left of the wrecked car. The proof shows that not much salvage remained. Mr. Williams testified that the salvage was not worth more than two or three dollars.

(b) That the Cumberland Motor Company offered through its owner, Mr. Williams, while he was on the witness stand, to sell the salvage. At times Mr. Williams appeared to be emotionally upset while on the witness stand and some of the observations that he made about the law would not be controlling on the Court.

(c) Cumberland did not process title to the automobile after the accident. Counsel asserted that this was a factor considered by the Court in the case of Benton v. State Farm Insurance Co., 306 F.2d 179 (C.A. 6), a case relied on by plaintiffs to support their contention of liability. The facts in that case, as set forth in the opinion of the Court, are obviously different from the facts in the case under consideration. The Court quoted a part of the testimony of Deuberry, one of the parties involved, as follows:

" * * * Deuberry testified that he told Butler he would sell the truck to him for two hundred dollars; that he had 'actually in mind' that if Butler ever paid him one hundred and fifty dollars, he would let him have the truck; that he 'didn't feel I could transfer' the title, 'until I had received some substantial amount on it.' Deuberry also testified that he did not expect to see the truck again after he had transferred possession to Butler, unless Butler failed to pay before the time when his state license and automobile insurance expired, 'for the simple reason that the license on it were running out, my insurance was running out, * * *. I wanted him to be able to drive it to [my place] with this license it had on it.' When the truck was damaged in the accident, Deuberry sold it to the owner of a service station where it was then located transferring the title at the same time, without consulting Butler. Deuberry further testified: 'At the time of the accident I worried for half a day thinking I didn't have insurance on that truck and thinking it might come back to me and be my responsibility, that there might be a responsibility there. And at the end of that half day I checked my papers and found my in-

surance still holding good for four days.' "

The trial judge found as a fact that title to the automobile which was involved in the suit did not pass from the alleged seller to the alleged purchaser, and the appellate court upheld the findings of fact of the trial Court.

(d) No power of attorney was given.

(e) Williams would have sustained loss without the credit insurance.

(f) Cumberland Motor Company made about nine sales on the date that the claimed Godsey sale was made, and in all of the transactions, except the Godsey transaction, title papers were given to the purchaser.

(g) The deal was not to be closed until $7.10 was paid by Mrs. Godsey and it was not paid because of her death.

(h) Title papers to the car in question have not been processed by Cumberland Motor Company to this date.

The provisions of law relied upon by plaintiffs to show that ownership did not pass to Mrs. Godsey are T.C.A. § 59–320, which states in effect that a transferee of a motor vehicle before operating it shall apply for and obtain a registration and apply for a certificate of title in the manner provided in section 59–401 with certain exceptions not material in this case.

They also rely upon T.C.A. § 59–321 which provides in effect that when the transferee of a motor vehicle is a dealer who holds the same for sale and resale and lawfully operates the same under dealers' registration plates, such transferee shall not be required to obtain a new certificate of title but such transferee upon transferring his title or interest to another person shall execute an assignment and warranty of title upon the certificate of title, if in his possession; or, if in the possession of the lienor, he shall execute a bill of sale and deliver the same to the person to whom such transfer is made together with his evidence of ownership, which assignment or bill of sale shall be acknowledged before a notary public.

The bill of sale was executed by the Cumberland Motor Company and signed by its owner and properly notarized in Cumberland County, Tennessee.

Judge McAmis has held that the certificate of title referred to in this section is not necessary to pass title. In the case of Hunter v. Moore, 38 Tenn.App. 533, 538, 276 S.W.2d 754, 756, the Court said:

"It is our opinion that, under Section 50 of the Act, title passed when complainant executed and delivered a notarized bill of sale to McDonald. It is true this Section contemplates that the dealer in such a situation will transfer along with the bill of sale such muniments of title as the dealer may have but we cannot read into the Act a requirement that such transfer is a condition precedent to a transfer of legal title. The Act being in derogation of the common law, the provisions of this Section relating to transfer of the dealer's muniments of title *will be regarded as directory rather than mandatory.* See 46 Am.Jur. pp. 227–229, Sales, Sec. 35." (Emphasis added.)

See Olin Mathieson v. Southwest Casualty Co., 149 F.Supp. 600 (D.C.Ark.)

As heretofore pointed out, Mrs. Godsey executed a conditional sales contract, in addition to a purported conditional sales contract which has been referred to as the house note, in which Cumberland Motor Company retained title to the automobile until the eighteen consecutive monthly payment notes of $48.14 were paid in full. The retention of title under Tennessee law is in the nature of a lien and mere security for the payment of the purchase price and does not give the vendor any right to use or control the vehicle which is the subject of the conditional sales contract. The conditional sales contract in this case would not bring the automobile within the protection of the policy. Home Indemnity Co. v. Bowers, 194 Tenn. 560, 253 S.W.2d 750, 752, 36 A.L.R.2d 668.

■ Finally, T.C.A. § 59–328 makes it a misdemeanor for any person to fail or neglect to properly endorse or deliver any certificate of title or title card to the division, the transferee or other person lawfully entitled thereto. If Cumberland failed to comply with this section of the Code such failure could be a matter of concern of the State of Tennesssee but would not prevent ownership of the car from passing to Mrs. Godsey.

■ The cash register tape of Cumberland showed that the automobile delivered to Mrs. Godsey was taken out of the inventory of Cumberland on July 25, 1964. This is strong evidence that ownership to the car passed from Cumberland. The control tape showed the cash receipts of the company for July 25, 1964.

Nancy Tollett, secretary or bookkeeper of Cumberland, stated that she had all of the papers necessary to present to the County Court Clerk's Office, which she expected to do the Monday following the Saturday on which Mrs. Godsey and Cumberland dealt, to procure a title certificate for Mrs. Godsey to the car that had been transferred to her.

Mr. Williams, the owner of Cumberland, testified that ownership passed to Mrs. Godsey on July 25, 1964. He stated that he expected to cause to be registered the transfer card in the name of Mrs. Godsey on the Monday following the Saturday upon which the car was delivered to Mrs. Godsey. He stated unequivocally that ownership to the car did not depend upon the payment of the house note of $7.10 of Mrs. Godsey although he expected it to be paid the following Monday; that he kept the bill of sale, invoice, et cetera, to present to the County Court Clerk to show to the County Court Clerk that ownership to the car described in the papers was in the name of Mrs. Godsey.

Mention has been made that Williams failed to secure an executed attorney in fact designation authorizing him to register the car with the County Court Clerk. Counsel says that the procurement of such a designation is a sine quo non for the registration of a transferred automobile.

Miss Davis, assistant County Court Clerk, stated that under the present law it was necessary for an automobile dealer to have a designation as an attorney in fact from the transferee in order to register ownership or title in the name of the transferee.

The representatives of the motor company agree that the law is, as stated by Miss Davis, but they also stated that prior to some two years ago that it was the custom in Cumberland County to register a car in the name of a purchaser without having an attorney in fact designation from the purchaser.

Miss Davis estimated that some ten per cent of the purchasers still followed this procedure. We do not think this factor to be significant in the determination of the controlling issue except for its bearing upon the intent of the parties with respect to the transaction.

In addition to the execution of the many papers, heretofore mentioned, by the motor company and by Mrs. Godsey, the conditional sales note was transferred by Cumberland to the First National Bank of Crossville, Tennessee and the Crossville bank collected the credit insurance for the indebtedness that the motor company held against the estate of Mrs. Godsey. This was done after the fatal accident.

The rights of the parties were probably fixed before the date of the accident and could not be changed after the date of the accident; however, these matters may be looked to for whatever bearing they may have on the intention of the parties relative to the transfer of the ownership of the car that is involved in the suit.

■ Counsel for plaintiffs frankly concedes that under the Tennessee law it is not necessary for a transferee of a motor vehicle to have title from the State of Tennessee in order to own the vehicle. Title in Tennessee is simply strong evidence, if not irrebuttable evidence, of ownership of the automobile.

With proper deference to the conscientious and able counsel representing the plaintiffs, the Court is of the opinion and finds as a fact from the evidence in the case that ownership to the car driven by Mr. Godsey at the time of the fatal accident passed from Cumberland Motor Company to Mrs. Godsey on July 25, 1964 prior to the hour of the accident. Under such circumstances it was not necessary since she owned the car for Mrs. Godsey to procure consent from Cumberland Motor Company to drive the car or permission for her husband to drive the car. Consequently, there could be no coverage under the policy.

The parties will prepare a proper order in conformity with the views expressed herein.