In the Matter of William Meredith VAUGHN, Individually and formerly doing business as Vaughn Import Motors.

No. BK-67-1579.

United States District Court
M. D. Tennessee,
Nashville Division.

April 11, 1968.

Maclin P. Davis, Jr., and Robert C. Hendon, Jr., Nashville, Tenn., for First American Nat. Bank.

James W. Crutcher, Nashville, Tenn., for trustee in bankruptcy.

K. R. Herrell, Nashville, Tenn., for Revenue Department, State of Tennessee.

## MEMORANDUM AND ORDER

FRANK GRAY, Jr., District Judge.

The matter before the court arises out of an order of the Referee in Bankruptcy denying a petition of disclaimer of the proceeds of a sale of certain motor vehicles in the bankrupt's possession when the petition in bankruptcy was filed. The petition of disclaimer was filed by First American National Bank of Nashville (hereafter First American), a creditor of the bankrupt, which now seeks judicial review of this order pursuant to § 39 of the Bankruptcy Act, 11 U.S.C. § 67.

The relevant facts, as stipulated by the parties and heretofore adopted by the Referee, are as follows. William M. Vaughn, a licensed [1] automobile dealer doing business under the name of Vaughn Import Motors, filed a voluntary petition in bankruptcy August 17, 1967. As of this date, Vaughn's inventory included sixteen new and twenty-five trade-in or used vehicles in which First American alleges it had perfected a security interest by filing a financing statement covering these vehicles in the manner prescribed by the Uniform Commercial Code, T.C.A. 47–9–201 et seq. and 47–9–401 et seq. The security interests in question were acquired by First American under a floor plan financing arrangement entered into in November, 1965.

At the time Vaughn's petition in bankruptcy was filed, a balance due on the notes secured by these forty-one vehicles in the amount of $59,504.96 was in default. Accordingly, First American, having obtained the consent of the Trustee in bankruptcy, repossessed and sold both the new and trade-in vehicles in accordance with its security agreement and the applicable law, recovering thereby the sums of $32,143.60 and $21,920.00 respectively. These proceeds were applied to the above indebtedness reducing it to a remaining unpaid balance of $10,861.-

---

1. The licensing of automobile dealers in Tennessee is governed by the provisions of T.C.A. 59–114.

94 [2] which was then satisfied out of a reserve account held by First American as security for all of Vaughn's obligations to it including those arising under the 1965 floor plan arrangement.

On November 29, 1967, First American filed a petition for a disclaimer as to all of the proceeds of the sale. The Referee denied this petition, holding that First American, by virtue of the filing of a financing statement, had perfected a security interest in the sixteen new vehicles, but that its security interest in the trade-in vehicles was excluded from the filing requirements of the Uniform Commercial Code by T.C.A. 47–9–302 (3) (b) and could only be perfected by noting these liens on the title certificate of each vehicle in the manner prescribed by the Tennessee Motor Vehicle Registration Law, T.C.A. 59–301 et seq. Thus, since First American sought to perfect its security interest in the trade-in vehicles solely by filing a financing statement under the Uniform Commercial Code, its petition for a disclaimer as to the proceeds of the sale of these vehicles was denied.

The determinative issue herein, therefore, is the propriety of the Referee's ruling that a security interest in a used or trade-in vehicle held by a licensed dealer as inventory may be perfected only by noting the secured party's lien on the title certificate of such a vehicle pursuant to the provisions of the Tennessee Motor Vehicle Registration Law, T.C.A. 59–326 and 59–327.

Although § 9–302(1) of the Uniform Commercial Code conditions the perfection of security interests in chattels upon the filing of financing statements, the draftsmen of the Code, due to the widespread existence of state title acts governing the perfection of security interests in motor vehicles, concluded that security interests in vehicles covered by such title acts were to be excluded from the basic filing requirement of Article 9. Uniform Commercial Code § 9–302, Comment 8; 1 Gilmore, Security Interests in Personal Property, § 20.8. This exemption provision was inserted in § 9–302(3) (b) in the following two alternative forms:

"(3) The filing provisions of this Article do not apply to a security interest in property subject to a statute

\* \* \* \* \* \*

[Alternative A:]

(b) of this state which provides for the central filing of, or which requires indication on a certificate of title of, such security interests in such property.

"[Alternative B:]

(b) of this state which provides for central filing of security interests in such property, or in a motor vehicle which is not inventory held for sale for which a certificate of title is required under the statutes of this state if a notation of such a security interest can be indicated by a public official on a certificate or a duplicate thereof."

Section 9–302(4) further provides that security interests coming within either Alternative can only be perfected by compliance with the relevant state statute.

The status of motor vehicles held by a dealer in an Alternative A jurisdiction is clearly stated in Professor Gilmore's recently published treatise: [3]

"Alternative A adopts the coverage of the certificate of title act, whatever that coverage may be. For example, if the title act \* \* \* does not cover dealer inventory then the filing exemption would not extend to such inventory; on the other hand, if the title act does cover inventory, so does the filing exemption." [Citations omitted.]

---

2. This amount is the aggregate of $5,-441.36 principal, $3,884.39 interest, and $1.536.19 representing the expenses of the sale and attorney's fees as provided for in the notes.

3. 1 Gilmore, Security Interests in Personal Property, § 20.8, at 574.

Accordingly, since the Uniform Commercial Code as enacted in Tennessee[4] adopts Alternative A,[5] the narrow question before the court is whether trade-in or used vehicles in the inventory of a licensed dealer are subject exclusively to the lien notation provisions of T.C.A. 59–326 and 59–327.

In answering this question affirmatively, the Referee concluded that since trade-in or used vehicles have outstanding certificates of title and thus are subject to T.C.A. 59–326 and 59–327 prior to being acquired by a dealer, they must remain so once they have become part of a dealer's inventory. The Trustee herein has made substantially the same contention, citing In re Crosson, 226 F.Supp. 944 (E.D.Tenn.1963), and In re Wallace, 251 F.Supp. 581 (E.D. Tenn.1966), in support thereof.

The critical defect in this line of reasoning is demonstrated by the fact that neither *Crosson* nor *Wallace* dealt with encumbrances on inventory vehicles executed by a dealer, but rather involved purchase money security interests executed by individual buyers who subsequently went bankrupt. In short, it is the treatment of vehicles comprising a dealer's inventory under the Motor Vehicle Registration Law which is at the core of the instant controversy.

■ The inapplicability of T.C.A. 59–326 and 59–327 to used or trade-in inventory vehicles is illustrated by the language of T.C.A. 59–321:

"Transfers to dealers.—*When the transferee of a vehicle is a dealer who holds the same for resale and lawfully operates the same under dealer's registration plates, such transferee shall not be required to obtain a new registration of said vehicle or be required to obtain a new certificate of title,* but such transferee, upon transferring his title or interest to another person, shall execute an assignment and warranty of title upon the certificate of title, if in his possession or if in the possession of lienor, or he shall execute a bill of sale and deliver the same to the person to whom such transfer is made, together with his evidence of ownership, which assignment or bill of sale shall be acknowledged before a notary public." [Emphasis added.]

The practical effect of T.C.A. 59–321, therefore, is to render dormant the outstanding certificate of title on a trade-in or used vehicle held by a dealer as inventory insofar as the exclusive lien notation provisions of the Motor Vehicle Registration Law are concerned. Cf. Hunter v. Moore, 38 Tenn.App. 533, 276 S.W.2d 754 (1954). In this respect, the title certificate of a used inventory vehicle is not materially different from the certificate of origin of a new inventory vehicle.

■ That T.C.A. 59–321 must be construed as excluding dealer inventory from the lien notation provisions of T.C.A. 59–326 and 59–327 seems further required by T.C.A. 59–324:

"Liens to be noted on certificate of title—Division entering lien.—When any new lien, other than a lien dependent solely upon possession, is placed on any motor vehicle coming within the title provisions of chapters 1 through 6 of this title in a transaction not involving any change of ownership, *the owner shall deliver his certificate of title,* if in his possession, on to the lienor, who shall forward the same, * * * directly to the division, and the division, when satisfied of the lienor's right to have his lien noted on the certificate of title, shall note the said lien thereon and return the certificate of title to the said lienor." [Emphasis added.]

In light of this language, to adopt the Referee's position either would require a dealer to secure new title certificates for each used vehicle he wishes to encumber notwithstanding T.C.A. 59–321 or would result in the notation of liens on used

---

4. Pub.Acts Tenn., 1963, ch. 81 [Effective date July 1, 1964].

5. T.C.A. 47–9–302(3) (b).

inventory vehicles on the title certificate of the former owner.

■ Perfecting a non-possessory security interest in an automobile in either the manner contemplated by the Uniform Commercial Code or the Motor Vehicle Registration Law has a common purpose: giving "claim and notice to the world of a specific lien or a claim against a specific item of property, * * *." White, Tennessee Law and the Secured Transactions Article of the Uniform Commercial Code, 17 Vand.L.Rev. 835, 854 (1964). In the instant context, the intended beneficiary of this notice function is primarily the prospective creditor of an automobile dealer.[6] The Referee's decision in this respect, however, places a considerable obstacle in the path of such a potential creditor seeking to ascertain the extent to which a dealer's used inventory is subject to prior encumbrances. In the analogous case of Howarth v. Universal C. I. T. Credit Corp., 203 F.Supp. 279 (W.D.Pa.1962),[7] the court spoke to this problem:

"In addition we think it simplifies the means whereby a dealer's prospective creditors may protect themselves. A creditor who must search the records in the offices of the Secretary of the Commonwealth and the Prothonotary of the County for notice of encumbrances on new cars in a dealer's inventory at the same time will get notice of the encumbrances on the used cars in his inventory. This method seems to be much more convenient and effective than if the creditor in order to protect himself should be forced to demand an inspection of the dealer's title certificate to each used car in his inventory, * * *." (203 F. Supp. at 284)

■■ For the foregoing reasons, it is the opinion of the court that a secured party engaged in the wholesale financing of trade-in or used inventory vehicles for a licensed dealer may perfect a valid security interest therein in the same manner employed to perfect security interests in new inventory vehicles, that is, by filing a financing statement pursuant to the provisions of the Tennessee Uniform Commercial Code. Accordingly, the order of the Referee in Bankruptcy insofar as it denies the petition of disclaimer as to the proceeds of the sale of the trade-in vehicles is reversed.

It is so ordered.

---

6. A subsequent buyer of a used automobile is clearly protected by T.C.A. 47–9–307 (1) which provides, in pertinent part, that "[a] buyer in [the] ordinary course of business * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

7. Section 207(c) of the Pennsylvania Motor Vehicle Code provides that a dealer in used vehicles "shall not be required to apply for a certificate of title" but, unlike T.C.A. 59–321, it further requires such dealers to notify the Commonwealth Department of Motor Vehicles of the acquisition of used vehicles within ten days.