J. N. STEVENS (deceased) now revived in the name of
EDNA STEVENS BENTLEY v. STATE FARM
MUTUAL AUTOMOBILE INSURANCE COMPANY.

EDNA STEVENS (now BENTLEY) v. STATE
FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY. Nos. 23, 24.—443 S.W.2nd 512.

Eastern Section. March 13, 1969.

Certiorari Denied by Supreme Court July 7, 1969.

Hunter, Smith, Davis, Norris, Waddey & Treadway, Kingsport, for Edna Stevens Bentley.

Curtin, Haynes & Winston, Bristol, for State Farm Mutual Automobile Insurance Company.

PARROTT, J. In these consolidated chancery causes complainants seek payment of unsatisfied judgments awarded against Benny Worley in an earlier suit for damages growing out of an automobile accident.

The bills aver the car involved in the accident and driven by Worley was being operated with the consent, permission and knowledge of the owner, Sherman Lilly; that the automobile was insured under a policy of liability insurance issued to Lilly by defendant, State Farm Mutual Automobile Insurance Company.

Defendant's answer to this bill denies the terms and conditions of the policy afforded coverage to Benny Worley or the vehicle he was driving at the time of the accident. By stipulation it is admitted an automobile liability policy was issued to Lilly on the car in question.

However, the defendant insists this policy was not in effect because Worley was the owner of the car by a valid transfer or sale which had been completed prior to the accident.

After a hearing of the cause on depositions, the chancellor entered a memorandum opinion and decree finding as a fact that ownership of the car had been transferred from Lilly to Worley prior to the accident, leaving no legal basis for holding the defendant liable.

The record reveals the accident for which complainants were awarded judgments occurred on the night of February 24, 1956. It is shown that on February 22, 1956, between 9:00 and 11:00 p.m. Sherman Lilly and Benny Worley by chance met at a used car place in Bristol, where Lilly had gone to purchase a generator for his 1946 Chevrolet. While at the used car place Lilly noticed a 1948 Ford belonging to Worley. Upon learning the Ford was for sale and after some discussion about trading cars, Lilly and Worley went to Lilly's father-in-law's home where his 1946 Chevrolet was located. According to testimony of both Lilly and Worley, there was no bill of sale or title papers executed that night. However, the undisputed proof shows that the parties switched the license plates on the cars with Worley driving away in the 1946 Chevrolet and Lilly keeping the 1948 Ford.

Also at the time the parties agreed on the respective values of the cars with Lilly paying Worley a cash difference plus a used generator. Lilly says it was late at night and there was no one available to notarize the transfer papers but the trade was agreed upon with the understanding the two men would meet the next day to execute the necessary papers.

Worely's testimony differs only to the effect that it was his understanding that if the Ford had a "busted block," the trade could be called off by Lilly.

On the next day the weather was bad and the parties did not see each other or meet until the morning of February 25th, the day after the accident, when Lilly picked up Worley at his home. On this occasion Lilly observed the rear end of the 1946 Chevrolet had been damaged. There was some discussion about the accident but Worley never indicated that he desired to call off the trade. In fact, he proceeded on with Mr. Lilly to the Lincoln-Mercury place where his title was being kept and the notarization of the bill of sale and exchange of title papers was completed.

According to Lilly, it was his belief and intention that the trade or swap had been fully completed on the night of February 22nd. Worley's memory is rather hazy as to some of the details of the trade and what actually occurred but he admits he "liked the little old car" and was of the opinion the parties had "actually traded but we hadn't changed the title, changed no papers or nothing of that nature at all."

■ We agree with the chancellor's finding of fact that on February 22nd it was the intention of the parties to pass title of their cars. We further concur with the chancellor's finding that ownership of the car driven by Worley at the time of the accident had passed from Lilly to Worley prior to the accident, leaving no legal basis for holding the defendant liable.

Our concurrence with the chancellor on the above findings leaves to be determined complainants' insistence that title to an automobile cannot pass without strict

compliance with the title and registration statutes. T.C.A. sec. 59-319 et seq.

■ This precise question was before this Court in the recent case of Hayes v. Hartford Accident and Indemnity Co., 57 Tenn.App. 254, 417 S.W.2d 804, in which it was held the failure to comply with the title and registration laws does not render the sale of an automobile void. In that opinion there is a full and complete discussion of the effect and purpose of the statutes pertaining to the transfer of title and registration of vehicles as well as the statute creating a presumption of ownership from registration. We think it would be superfluous and unnecessarily lengthen this opinion to set out in detail the court's discussion of the various statutes in that case. It suffices to say the court held, notwithstanding the fact title certificate had not been assigned until two months after the delivery of possession of the car which was after the car was involved in an accident, the seller's insurer was not liable because the necessary elements of ownership had been fully completed prior to the accident.

In the earlier case of Hunter v. Moore, 38 Tenn.App. 533, 276 S.W.2d 754, Presiding Judge McAmis said in regard to our title and registration law:

"It is our opinion that, under Section 50 of the Act [Chapter 70, Acts of 1951], title passed when complainant executed and delivered a notarized bill of sale to McDonald. It is true this Section comtemplates that the dealer in such a situation will transfer along with the bill of sale such muniments of title as the dealer may have but we cannot read into the Act a requirement that such transfer is a condition precedent to a

transfer of legal title. The Act being in derogation of the common law, the provisions of this Section relating to transfer of the dealer's muniments of title will be regarded as directory rather than mandatory. Sec. 46 Am.Jur. pp. 227-229, Sales, Sec. 35."

In Garrett v. American Mutual Life Ins. Co., 261 F. Supp. 161, a case very similar to this one, counsel conceded that under Tennessee law it was not necessary for a transferee of a motor vehicle to have title from the State of Tennessee in order to own a vehicle. In that case Judge Taylor, in the opinion, agreed with counsel that ownership was a question of fact, mainly depending upon the intention of the parties. It was his holding that registration certificates and title papers were simply strong evidence of ownership of an automobile and a failure to comply with the statute could be a misdemeanor but would not prevent ownership or title of the car to pass to the buyer.

In the instant case we think the evidence shows there was a meeting of the minds as well as an intention of the parties to give possession and control of the car to Worley on February 22nd. Consequently, at the time of the accident Worley was the owner of the car, leaving Lilly without authority to grant permission or consent for its use so as to provide coverage under the terms and conditions of the policy.

The decree of the chancellor is affirmed with the costs taxed to complainants and their sureties.

McAmis, P. J., and Cooper, J., concur.