BOBBIE RUTH MERCADO and Rebecca Sue Pulley, Complainants-Appellants, v. THE TRAVELERS INSURANCE COMPANY, Defendant-Appellee.—
443 S.W.2d 819.

Middle Section. March 28, 1969.

Certiorari Denied by Supreme Court August 1, 1969.

742

William J. Harbison and Joe P. Binkley, Nashville, for complainants-appellants.

Russell G. Lazenby, Jr., Glasgow, Adams & Taylor, Nashville for defendant-appellee.

TODD, J. Complainants have sued as injured third party beneficiaries of an automobile liability insurance policy. The chancellor denied relief and complainants have appealed.

In separate circuit court actions, complainants sued one William Clarence Stack for personal injuries and recovered judgments which are final and unpaid. In this joint suit in equity, complainants assert their rights to satisfaction of said judgments because of the existence of a policy of liability insurance issued by defendant to one James E. Fuller containing the following provision:

Persons Insured

The following are insureds under Part I:

(1) the named insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named insured, * * *

It is insisted by complainants that at the time of their injury said Stack was driving insured automobile with the permission of the insured Fuller within the meaning of the above quoted policy provision and therefore that they are entitled to recover the amount of their previously obtained judgments from the defendant insurance company.

Defendant admits the injury of the complainants while riding in a vehicle being operated by Stack and insured

to said James E. Fuller. The only defenses are, (1) that Stack was in fact the owner of the vehicle and his possession and use thereof were not covered by the above quoted policy provision, and (2) that there was a failure to give prompt notice of loss as required by the policy. In both the trial court and this Court, the first defense has presented the major issue.

The only witness to testify before the chancellor was James E. Fuller. The substance of his testimony is as follows:

During 1963, Fuller was in the trucking business. He had a driver named William Clarence Stack, who desired to buy a 1956 Cadillac but could not do so because of his credit rating. Fuller undertook to assist Stack in buying the car. Fuller purchased the Cadillac in his own name, trading in Stack's old car, paying $400.00 cash furnished by Stack, and signing a lien note for the balance of $450.00. The note was assigned to a finance company, and Stack was to pay the installments to the finance company as they came due.

Fuller had possession of the car only briefly. Promptly after being purchased in July 1963, the car was turned over to Stack who retained possession until October 25, 1963, the date of the injury of complainants. Fuller executed and delivered to Stack what he describes as a bill of sale, witnessed by two of his employees. There is no evidence of the contents of this instrument, however Fuller testified as follows:

"Q You say you have made, but you don't now have, a handwritten bill of sale?

A No.

Q But you understood the title was going to remain in your name until the note was paid off, and the insurance would remain in your name until the note was paid off?

A That's right.

Q And Mr. Stack understood that, too, I guess.

A That's right.

Q Well, what I wanted to ask you is, he just bought a car, but actually, as far as Patterson Motors were concerned, it was you that had bought a car, is that right?

A Yes.

Q And did they give you a bill of sale?

A No, not at the time, was not no bill of sale anywhere, it went to the finance company.

\* \* \* \* \* \*

Q Did Gay pay you?

A I don't know how they done the deal. I stood good for the car. In other words, I wasn't involved in the trade. I just was standing good for the boy's credit, at the time he was working for me.

\* \* \* \* \* \*

Q Who had the title papers? Did the Thrift Corporation have those, or did you have them?

A They had them.

Q Well, now, what had you all done, if anything, about transferring the title to the car?

A Couldn't transfer it because he hadn't paid it off.

Q How was the title at that time?

A It was in my name.

Q In your name?

A Yes.

Q How about insurance?

A I insured it, myself, to make sure if anything happened I was clear.

Q You took out a policy immediately?

A That's right.

Q I didn't know—you had other cars and you just added this one to it?

A Yes, I had other cars.

Q You added to the existing policy?

A Yes, sir.

Q That was with Travelers?

A Yes, that was to be on the short term deal, until he paid it off.

Q Did you tell Travelers this?

A No.

Q You never did tell Stack you had liability insurance?

A No, I didn't tell him nothing. As far as he's concerned, he just bought a car.

Q You all discussed this?

A Yes, sir. We didn't discuss no insurance on Stack now. All I discussed with him was this note. Was not nothing said about no insurance.

The chancellor's memorandum opinion contains the following:

"From the above evidence it is my judgment that there had been a completed sale of the automobile in question and the case of Garrett vs. American Mutual Liability Insurance Company is controlling. From the proof I think it is clear that it was the intention of Fuller and Stack that ownership passed to Stack and that Fuller retained title as security for payment on the notes."

The final decree contains the following:

"* * * it appears to the Court that the automobile described in the bill was, prior to October 25, 1963, sold by James E. Fuller to William Clarence Stack and, therefore, was not covered under the policy of insurance issued by Travelers Insurance Company * *. *"

* * * * * *

"ORDERED, ADJUDGED AND DECREED by the Court that the complainants' suit be and the same is hereby dismissed at the cost of complainants."

The sole assignment of error is:

"The Chancellor erred in finding and holding that there had been 'a completed sale' of the automobile in question, and that the insurance coverage purchased and taken out by Fuller was not in force and effect as to this automobile on the date of the accident."

Complainants insist that the transaction by which Stack received possession of the Cadillac was nothing more than an executory agreement to sell the car and that the parties deliberately withheld the transfer of ownership until all payments had been made. The chancellor found otherwise, and the above quoted testimony sup-

ports his finding. Since the enactment of the Motor Vehicle Title Registration Law, there has been considerable ambiguity and confusion of verbiage relating to the ownership of automobiles. Traditionally, the word "title" has meant the right to or ownership in land, however the word "title" has also come to mean evidence of ownership. See Black's Law Dictionary, Fourth Edition, p. 1665. Thus the certificate evidencing registration of ownership of an automobile is now frequently referred to as "the title", and one who has physical possession of that certificate is said to "have the title", even though he might own no interest in the automobile.

■ The testimony of Mr. Fuller, quoted above, must be interpreted in the light of the foregoing confusion of meaning of words. When he said the finance company "had the title", he evidently referred to the title papers and some form of lien to secure the debt. When he said "I had the title", he evidently referred to the registration of the title on State records in his name. When he said he wrote out a bill of sale, his clear meaning was that he conveyed to Stack, albeit informally, all of the rights of ownership which he had in the car. A bill of sale is a written agreement * * * by which one person assigns or transfers his right to or interest in goods and personal chattels to another. Black's Law Dictionary, Fourth Edition, p. 211.

■ Complainant urges that since there is no evidence of the contents of the "bill of sale", the Court must depend upon what the parties intended the instrument to mean. This is true. The chancellor found, and this Court agrees, that Fuller never intended to own the automobile, that he merely "bought it for" Stack, and that both he and Stack intended and understood that the bill of sale

would transfer to Stack all of the interest or ownership of Fuller in the car, subject only to the lien of the finance company, and the completion of the record title in Stack after payment of the lien debt.

▇ Compliance with the formal requirements of the Tennessee Motor Vehicle Title and Registration Law is not a prerequisite to transfer of ownership. Hunter v. Moore, 38 Tenn.App. 533, 538, 276 S.W.2d 754, 756 (1954). In Hayes v. Hartford Acc. & Indem. Co., 57 Tenn.App. 254, 417 S.W.2d 804 (1967) in a case similar to the present case, this Court quoted the Uniform Sales of Goods Act and the Uniform Commercial Code and held that a transfer of ownership had occurred in spite of failure to comply with the Motor Vehicle Title and Registration Law.

▇ This Court agrees with the chancellor that Mr. Fuller intended to transfer all his interest in the car by his ''bill of sale'' to Mr. Stack, that it was legally possible for him to do so by such means, and that he did in fact do so.

Complainants urge that the purchase of liability insurance was inconsistent with intent to part with ownership, or that it was intended that the insurance be for the benefit of Mr. Stack. The peril of being sued simply because the title was registered in his name is sufficient explanation of the purchase of the insurance. The lack of technical legal knowledge as to his exact legal liability in such a case is also an adequate explanation for his desire and effort to protect himself from the unknown perils of holding record title to the vehicle.

Mr. Fuller testified that he procured the insurance solely for his own protection. He told Stack nothing of

the insurance, and he told the insurance company nothing of the bill of sale to Stack. Mr. Fuller was apprehensive of possible claims or suits against him because of his record title. Even though he might not be legally liable for the negligence of Stack, he would have been subject to the expense of defending suits based upon the presumptions arising by statute.

If Mr. Fuller had bought the insurance with intent to protect Mr. Stack, the purchaser, such action would have been a fraud upon the insurance company. Complainants' brief admits that there is no hint or suggestion of fraud or collusion in this respect.

Complainants rely upon the requirement of Sec. 59-433 T.C.A. that his registration plates be removed by the seller upon transfer of the vehicle. There is no testimony in the record as to who owned the registration plates or whether or not they were removed; but even if it be assumed that Mr. Fuller did fail to comply with this statute, there is no provision therein penalizing the insuror of a violator by extending existing insurance to cover the transferee and persons injured by his negligence. At most, this statute might be a circumstance reflecting upon the intent of the parties if it should be shown that the parties knew of the statute and did not comply with it.

Complainants rely upon Reece v. State, 197 Tenn. 383, 273 S.W.2d 475 (1954) for the proposition that "proof of registration is practically conclusive of ownership". In that case, the Supreme Court said:

"In civil cases, in the application of this statute it has been held that the presumption created by this statute is not a true presumption but is one created for

procedural purposes to supply the place of proof and that when credible evidence of unimpeached and uncontradicted witnesses is adduced, the so-called presumption disappears; but in the absence of such proof the presumption remains in the case, so that a jury may either accept or reject the evidence offered by the opposite party, and if it rejects the same, the jury may then fall back upon the presumption."

The Reece case was based upon registration of license plates which is not shown in the present case. Furthermore, since the Reece opinion, the Supreme Court has denied certiorari in Hayes v. Hartford, supra, wherein this Court clearly held that there can be an informal transfer of ownership short of the formalities prescribed by statute. The Reece case was a criminal prosecution in which there was no evidence of ownership except license registration. In the present case evidence was presented to the trial court as to the true ownership of the vehicle, and there was no evidence of registration of license plates.

Complainants rely upon Tennessee Farmers Mutual Ins. Co. v. Canal Ins. Co., 58 Tenn.App. 1, 425 S.W.2d 762, (1967) wherein it was agreed between the seller, buyer and finance company that all title papers would be held by it and no evidence of transfer would be delivered to purchaser until buyer's check in full payment of the lien debt should clear the bank. Until the execution and delivery of such title papers, the purchaser was permitted to have possession of the vehicle (a truck) with limited use (pleasure only). The finance company neglected to deliver the papers, and the seller had never signed any evidence of the sale when the accident and injury occurred. This Court agreed with the finding of

the trial court that title had not passed and the insurance issued to the seller was effective. In so doing, this Court said:

"[1] It is not necessary to hold that, as between the parties or even as affecting insurance under an omnibus clause of an insurance policy, the only valid transfer of title is one strictly according to the statute. Here, under the finding of the Circuit Judge in which we concur, the intention of the parties was to hold in abeyance the passing of legal title. We do not have here a case where the intention of the parties was to transfer title without a formal transfer of the certificate of title.

"The express understanding of the parties that Hodges' use of the truck was to be limited to pleasure driving and that it was not to be used for business purposes indicates that the parties considered title had not passed. Otherwise, there would have been no reason or authority to limit use of the truck to pleasure." 425 S.W.2d at 765.

The Tennessee Farmers Mutual Insurance Co. case is distinguishable from the present case on a number of grounds. Each case, to a large degree, presents an issue of fact in the form of inferences to be drawn from uncontradicted testimony. In the former case, the trial court resolved the issue against the insuror of the seller and this Court affirmed. In the present case, the chancellor resolved the issue in favor of the insuror of the seller. There is a presumption that his finding is correct unless the evidence preponderates otherwise. Sec. 27-303, T.C.A. Furthermore, in the former case, no paper was executed by the seller. He was to sign the papers

after delivery by the finance company, which never occurred. In the present case, a bill of sale was executed and delivered. In the former case, the possession of seller was limited to pleasure use of a truck, which is a substantial limitation. The principal use of a truck would be business use, and this was forbidden. In the present case, there was no limitation of use whatsoever. In the former case, the permissive possession of the buyer was intended to be temporary in nature, anticipating further acts by seller to complete the deal, which acts never occurred. In the present case, nothing remained to be done by the seller. He had executed and delivered a bill of sale. Upon discharge of the lien at the finance company by the buyer, his title would be complete and unencumbered without further action of the seller. The Tennessee Farmers Mutual Ins. Co. decision is therefore not controlling in the present case.

■■■ Complainants cite Benton v. State Farm Mutual Automobile Ins. Co., 306 F.2d 179 (6th Cir. 1962) wherein a seller delivered possession of a truck to the buyer but retained the certificate of title until a substantial amount should be paid. The district court found, and the appellate court agreed that the seller deliberately retained the ownership and that the seller's insuror was liable. This case is distinguishable from the present case because no evidence of transfer was executed and delivered as in the present case; the parties expressly agreed that ownership was not to pass, which agreement did not occur in the present case; and the appellate court was affirming a finding of fact by a trial court, whereas this Court is asked by the complainants to reverse the finding of the trial court.

This Court cannot agree with the Benton opinion that "ownership could not pass without compliance with Section 59-319 (T.C.A.)". On the contrary, under suitable circumstances, a transfer of ownership may occur without compliance with the requirements of the Motor Vehicle Title and Registration Law. Hayes v. Hartford Acc. & Indem. Co., Hunter v. Moore, supra.

 Complainants insist that the chancellor erroneously relied upon the case of Garrett v. American Mutual Liability Ins. Co., 261 F.Supp. 161 (D.C.1966), because in that case the policy contained a provision excluding a vehicle:

"possession of which has been transferred to another by the named insured pursuant to an agreement of sale."

which exclusion does not appear in the policy in the present case. In the Garrett case the purchaser and the dealer agreed upon the terms of sale and all necessary papers were executed for a sale on credit before delivery of possession to the purchaser. A copy of the invoice and conditional sales contract were delivered to the purchaser, but the remaining papers were retained by the dealer with the understanding that the dealer would complete the details of transfer with state and county officials and then deliver a completed title certificate to the purchaser. The accident occurred the same day, before the dealer completed the transfer of registered title. The U. S. District Judge found as a fact that the ownership of the vehicle passed from the dealer to the purchaser during the foregoing transaction in spite of the delay in completing the registered title. It was accordingly held that the liability insurance issued to the dealer was not applicable.

The particular policy provision, last quoted above, is some ground for distinguishing the Garrett case from the present case, however Garrett discusses and applies the Tennessee rule that actual transfer of registration of title on the State Motor Vehicle Title Registration Records is not a prerequisite to transfer of ownership if the parties actually intend a transfer, citing Hunter v. Moore, supra.

Hayes v. Hartford Accident & Indemnity Co., 57 Tenn. App. 254, 417 S.W.2d 804 (1967) involved an accident which occurred on December 25, 1960. This Court stated material facts as follows:

"The undisputed evidence shows that on or about November 14, 1960, Curtis and Rutland traded trucks, Rutland paid $75.00 in cash, delivered his 1950 Ford truck, removed the license plates (which were apparently issued in Rutland's name) from the Ford truck, placed such license plates on the Chevrolet truck, took possession and control of the Chevrolet truck at that time and thereafter used it as his own property."

Recognizing minority authority otherwise, this Court cited Sec. 47-1218 and 47-1219 T.C.A. and 47-2-401 T.C.A. (Uniform Commercial Code) and held:

"In our opinion, it would be unjust and inequitable to hold the insurer of Curtis liable for damages inflicted by a motor vehicle which had been sold by the insured and had completely and irrevocably passed from his right of possession and control, simply because the insured had neglected to comply with a provision of the motor vehicle title and registration law by failing to execute and deliver a muniment of title prior to the occurrence of the accident, although the sale and transfer had been completed in every other respect."

There are differences between the facts of the Hayes case and the facts of the present case, which do not weaken the impact of the Hayes decision upon this case. In Hayes, cash and trade-in were delivered to seller, the car was delivered to and buyer attached his own license plates on November 14, 1960. No instrument of transfer was executed by seller until January 1961, after the accident. This Court held that the actions of the parties on November 14, 1961 were sufficient to transfer ownership on that date in spite of the failure of the seller to execute any instrument of transfer.

In the present case, there was an execution of a "bill of sale" at or about the time of the delivery and long before the accident. The record is silent in regard to the attachment of license plates by Fuller or Stack. The original bill alleges, and the answer admits, that at the time of the injury of complainants the Cadillac automobile bore license plates numbered 1-Z-5112; but neither pleadings nor testimony give any hint as to the name in which said license plate number was registered. Stack's old car was traded in on the Cadillac. It evidently bore license plates in Stack's name which were useless except for attachment to a car owned by Stack. The record does not disclose what became of them. The testimony of Mr. Fuller is silent as to whether he obtained license plates in his own name when he purchased the car, or if he did, whether he left such plates on the car when he delivered it to Mr. Stack. The reason for a "witnessed bill of sale" to Mr. Stack is not given. Whether this instrument was executed to enable Mr. Stack to transfer his license plates from his old car to the Cadillac is left to surmise.

In short, there is no evidence in regard to license plates, and this Court must resort to other evidence to

ascertain the intent of the parties. The execution of a "witnessed bill of sale" by the seller is a much stronger circumstance of transfer of title than the buyer's attachment of his own license plates to the vehicle.

The Hayes case involved a "garage liability policy" covering "any automobile owned by or in charge of the named insured", whereas in the present case an existing policy was amended to add the particular car in question. This difference is not deemed material to the result in the present case.

While it is true that there is some testimony of a retention of title by Fuller, this must be interpreted in the light of the average layman's knowledge, or lack of knowledge, of the technicalities and verbiage of automobile sales, titles and liens. It is well known that the vendor's lien upon an automobile is preserved by a form of "retained title" or "conditional sale", but such a transaction does not prevent the purchaser from receiving ownership of the vehicle subject only to the lien for unpaid purchase money. Such was the clear intent of the parties herein and the meaning of Mr. Fuller's testimony.

While there is some appearance of injustice in depriving these injured complainants of recovery on a policy which had been bought, and presumably paid for by Fuller, there are compelling reasons why a holding otherwise would be more unjust. It is uncontroverted that Fuller procured the insurance for the benefit and protection of himself and no one else. He told the insurance company nothing of his deal with Stack, and he told Stack nothing of the insurance he had procured. If the complainants, and as a result, Stack, should be allowed

to claim the benefits of the insurance procured by Fuller, then the issuance of insurance policies would no longer be a voluntary contract by insurance companies, for the insuror would be subject to unwanted and unpredictable liability for operation of a vehicle by unknown purchasers.

It is true that by the so-called "omnibus clause" customarily used in liability policies, the insuror assumes a certain limited liability for the acts of persons other than the insured. The limitation upon this liability is the word "permission". The word "permission" does not imply an absolute and irrevocable parting with possession and control, but rather means a temporary and revocable license to possess and/or use with the continued right of recall and incidental control by the person granting the permission. In other words, an owner granting "permission" to use his car retains a certain degree of control over the manner and duration of use; a seller gives up all control of manner and duration of use, except, in credit sales, in event of failure to pay purchase price.

Under the circumstances of this present case, this Court is satisfied that the chancellor reached the correct conclusion as to both facts and the law in reference thereto.

The decree of the chancellor is affirmed with costs.

Affirmed.

Shriver, P. J. (M. S.), and Puryear, J., concur.