Nathan E. COUCH, d/b/a Couch Motor Company, Appellant,

v.

Harry COCKROFT, Appellee.

Court of Appeals of Tennessee, Western Section.

Sept. 26, 1972.

Certiorari Denied by Supreme Court Feb. 5, 1973.

Warmath & Boyte, Humboldt, for appellant.

Wade H. Sides, Jr., and Robinson, Fisher & Avery, Memphis, for appellee.

MATHERNE, Judge.

The plaintiff, a dealer in new and used automobiles at Humboldt, Tennessee, sold to another dealer in used automobiles, H. L. Sartain of Millington, Tennessee, one new 1967 Cadillac automobile. The Cadillac was delivered to Sartain and possession surrendered to that purchaser. The certificate of origin issued by General Motors Corporation and the bill of sale from the plaintiff Couch to the buyer Sartain were attached to a draft drawn in favor of the plaintiff, which instruments were to be delivered to the buyer Sartain upon the draft being honored. The plaintiff Couch was a franchised dealer in Cadillac automobiles, and had conducted business with the buyer Sartain over several years and knew Sartain to be a dealer in automobiles. After the plaintiff delivered the Cadillac to Sartain, and before the draft had cleared the bank, the buyer Sartain sold the vehicle to the defendant Harry Cockroft. The draft was dishonored by the bank, and the plaintiff filed this replevin action against Cockroft. Under the replevin the plaintiff regained possession of the Cadillac and has since sold it to another customer.

The Chancellor held the plaintiff Couch had no right to replevy the Cadillac, and since Couch had sold the vehicle to a third party, the defendant Cockroft was entitled to the value of the automobile (found to be $7,060.50) at the time of the wrongful re-

plevy, plus interest to the date of judgment in the amount of $90.62, totaling $7,151.12, plus court cost. The plaintiff appeals asserting the Chancellor erred in the foregoing decree.

The plaintiff insists the sale to Sartain was not complete until the title papers consisting of the certificate of origin and the bill of sale from the plaintiff to Sartain were delivered to Sartain by honor of the draft, and therefore Sartain could not convey good title to Cockroft. The plaintiff further asserts the buyer Cockroft had actual knowledge the sale from the plaintiff to Sartain was treated by the parties as dependent upon the draft being honored when presented.

The defendant Cockroft asserts that, without knowledge of the plaintiff's claim, he purchased the Cadillac from Sartain who was in the business of selling automobiles; the purchase was made in the ordinary course of business, and he therefore takes title free from the plaintiff's claim, citing that portion of the Uniform Commercial Code codified as T.C.A. § 47–2–403(2) and (3), which provides:

"(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

"(3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

The definition of "buyer in ordinary course of business" is found at T.C.A. § 47–1–201(9):

" 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interests of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker."

The record reveals that when the defendant first approached Sartain at the latter's place of business, Sartain did not have the exact type Cadillac the defendant desired to purchase. Whereupon, Sartain told the defendant he would see if he could obtain such an automobile. Sartain to defendant's knowledge did call by telephone for the type automobile the defendant wanted, and did after the telephone conversation report to the defendant that he, Sartain, would have the type Cadillac the defendant wanted ready for delivery to the defendant that afternoon. The parties thereupon agreed on the purchase price. Sartain had in fact called the plaintiff Couch and obtained the Cadillac under the arrangement for payment as heretofore set out. Couch knew Sartain had a buyer for, or had sold, the Cadillac. Couch delivered the Cadillac to Sartain that afternoon and accepted Sartain's draft therefor. The next morning the defendant Cockroft paid Sartain for the Cadillac, received from Sartain a bill of sale and was told the manufacturer's certificate of origin would be delivered within a day or two.

The plaintiff insists the defendant Cockroft is not a buyer in the ordinary course of business because he accepted the automobile without the instruments of title as required by the Motor Vehicle Title and Registration law (T.C.A. §§ 59–301 to 59–330). We do not find a reported Tennessee case on the issue. This Court has, however, repeatedly held a failure to comply with the title and registration laws does not render the sale of an automobile void. Hayes v. Hartford Accident and Indemnity Co. (1967) 57 Tenn.App. 254, 417 S.W.2d 804; Stevens v. State Farm Mutual Automobile Ins. Co. (1969) 59 Tenn. App. 701, 443 S.W.2d 512; Mercado v.

Travelers Insurance Co. (1969) 59 Tenn. App. 741, 443 S.W.2d 819. We therefore conclude the failure of the purchaser to obtain from the seller a certificate of title, or other instrument showing compliance with the Motor Vehicle Title and Registration laws, does not in and of itself deny the purchaser the status of a buyer in ordinary course of business. For similar results from other jurisdictions, see: Rockwin Corporation v. Kincaid (1971) 124 Ga.App. 570, 184 S.E.2d 509; Medico Leasing Company v. Smith (Okl.1969) 457 P.2d 548; Commercial Credit Corp. v. Associates Discount Corp. (1969) 246 Ark. 118, 436 S.W.2d 809; Humphrey Cadillac and Oldsmobile Co. v. Sinard (1967) 85 Ill.App.2d 64, 229 N.E.2d 365. Some jurisdictions hold contrary to the foregoing based in the main, however, on the fact that compliance with the title registration and certification laws of those states is mandatory in order to have a valid sale of an automobile. See and compare: Nationwide Mutual Insurance Co. v. Hayes (1970) 276 N.C. 620, 174 S.E.2d 511, and the authorities therein cited.

Under the Uniform Commercial Code definition of "buyer in ordinary course of business", T.C.A. § 47–1–201(9), the buyer's knowledge and good faith are relevant on the issue of the applicability of the "entrustment statutes", T.C.A. § 47–2–403(2) and (3). See and compare: Linwood Harvestore, Inc. v. Cannon (1967), 427 Pa. 434, 235 A.2d 377. "Good faith" is defined at T.C.A. § 47–1–201(19) as "honesty in fact in the conduct or transaction concerned." Subsection (25) of the same Code Section refers to "knowledge" in the following manner: "A person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it."

■ The defendant Cockroft testified that at the time he agreed to purchase the Cadillac from Sartain he knew Sartain had obtained the vehicle from another dealer, but he had no knowledge Sartain had not made payment therefor. Sartain testified the defendant Cockroft did not know of the agreed arrangement between Sartain and Couch that the title papers to the Cadillac would accompany the draft issued in payment therefor. We agree with the Chancellor there was no knowledge in the defendant Cockroft of the arrangement between Sartain and Couch concerning the payment for the automobile.

■ The plaintiff further insists the defendant Cockroft did not act in "good faith" wherein he had experience as an automobile dealer, but he accepted a new Cadillac automobile from a non-franchised dealer without receiving the manufacturer's certificate of origin to that vehicle. The evidence reveals Cockroft had about ten years experience as a dealer in used and new automobiles. This experience ended, however, about fifteen years prior to the trial date of this lawsuit, and prior to the adoption of the Uniform Commercial Code by the General Assembly of the State of Tennessee. The good faith of Cockroft is further challenged on the ground he knew the Cadillac was purchased by Sartain by telephone to fill Cockroft's specific order and therefore Cockroft in good faith would be required to demand complete title papers with the delivery to him of the automobile.

Under the facts we hold the purchase by Cockroft was not a transaction "between merchants" as contemplated by T.C.A. § 47–2–104(3), so as to charge Cockroft with "the knowledge or skill of merchants." Under the facts we hold the defendant Cockroft under no greater burden of exhibiting good faith than applicable to a member of the general public.

■ The legislative intent by the enactment of T.C.A. § 47–2–403(2) and (3) was to protect the purchaser of goods entrusted to another who is engaged in the business of selling goods of that kind. We hold the fact Sartain obtained the Cadillac from some source unknown to the defendant Cockroft in order to meet the demand

of the defendant for a certain type vehicle did not put the defendant on notice to demand proof the vehicle was clear of liens. Under the facts of this case, all elements of the "entrustment statutes" were met. The Cadillac in the possession of Sartain was subject to sale the same as any other vehicle on Sartain's lot.

It results the decree of the Chancellor is affirmed. The cost of this appeal is adjudged against the appellant.

CARNEY, P. J., and NEARN, J., concur.