# MANUFACTURERS ACCEPTANCE CORPORATION v. ROY VAUGHN et al.—305 S. W. (2d) 513.

Middle Section.　August 31, 1956.

Petition for Certiorari denied by Supreme Court February 8, 1957.

10

A. L. Sloan, A. A. Kelly, South Pittsburg, S. L. Raulston, Jasper, for appellant.

Paul D. Kelly, Jr., Jasper, O. W. McKenzie, Dayton, Atchley & Atchley, Chattanooga, for appellees.

SHRIVER, J.   This began as a replevin suit for the recovery of a 1953 Chevrolet automobile growing out of the following sequence of events.

1.  W. L. Cookston traded in his 1953 Chevrolet sedan automobile to Gentry Chevrolet Co. on the purchase of a truck, in August 1954.   There was a lien on the Chevrolet in favor of General Motors Acceptance Corp. (hereinafter referred to as G.M.A.C.) to secure $640.39.

2. Gentry Chevrolet Co. then, on August 16, 1954, paid off the lien owed by Cookston to G.M.A.C., and about 30 days later, G.M.A.C. forwarded the certificate of title, which was in its possession, to Cookston with a statement showing that the lien had been satisfied.

3. In the meantime Gentry Chevrolet Co. sold the Chevrolet to one Ray Vaughn, taking his old car in trade and gave him a bill of sale to the Chevrolet and had him execute a title retention note for the balance of the purchase price. This sale and conditional sales contract were not registered with State Department as required by Statute.

4. Vaughn then set about trying to get possession of the certificate of title to said automobile. He went to a representative of Gentry Chevrolet Co. who said it was in the files but later stated that it had not been returned from G.M.A.C. Upon inquiry at the office of G.M.A.C. he was told that it had been mailed to Cookston. He then went to Cookston's home and procured the certificate from the latter's wife.

5. A few days later Vaughn and a man named Henderson went before M. L. Potter, a Notary Public in Hamilton County, where Henderson posed as Cookston and executed an assignment of the title certificate to Vaughn.

6. Vaughn then went to the Southern Acceptance Corp. to get a loan on the vehicle but was refused. He was told that it would be necessary for him to have the title transferred to his name. He, thereupon, made application through the County Court Clerk, to the State Motor Vehicle Division, for a transfer of the title to him.

He then took his copy of the application for transfer to Manufacturers Acceptance Corp. and was granted a loan of $600 on one occasion and about $400 on another.

7. About three weeks later Manufacturers Acceptance Corp. took Vaughn's copy of the application for title transfer and appended their lien notice and other necessary papers thereto and forwarded it to the Motor Vehicle Division in Nashville.

8. Before the aforesaid papers of Manufacturers Acceptance Corp. were received by the Motor Vehicle Division in Nashville, Vaughn's application had been received and acted on. A clear and free title certificate had been forwarded to him.

9. Armed with a certificate showing no encumbrances Vaughn went back to Southern Acceptance Corp. and borrowed $797.14.

10. Southern Acceptance Corp. promptly forwarded the title certificate along with their lien and other papers to the Motor Vehicle Division and the certificate was returned showing Southern to be the only lienor.

11. Shortly thereafter, Vaughn took the Chevrolet back to Gentry Chevrolet Co., surrendered it and was given a release of the note and chattel mortgage which he had executed to them.

12. By this time Manufacturers Acceptance Corporation's papers had reached the Motor Vehicle Division where it was observed that these papers antedated those of Southern Acceptance Corporation, whereupon, the Division requested Southern to return their papers for correction. Southern refused to do this.

## I

### The Proceedings

1. Manufacturers brought this suit in replevin against Gentry Chevrolet Co. and Vaughn.

2. Gentry Chevrolet Co. filed an answer and cross-bill bringing in G.M.A.C., Southern Acceptance Corp. and M. L. Potter, the Notary Public, and his surety.

3. Southern also filed a cross-bill and there are numerous amendments, answers, etc., so that all necessary parties are before the Court.

4. On averment in the bill that there was default in the payments due on complainant's loan to Vaughn, the replevin was issued persuant to fiat and served on Gentry Chevrolet Co., who then had possession, and the automobile in question was turned over to complainant, Manufacturers Acceptance Corp.

5. The Chancellor wrote a full and well reasoned opinion which was made a part of the record and which was implemented by a decree as follows:

"This cause came on to be heard on the 29th day of September, 1955, before the Hon. H. J. Garrett, Chancellor, upon the various pleadings, the depositions and exhibits of witnesses and argument of counsel; at which time the Court took the matter under advisement and requested briefs to be filed on behalf of all of the parties, from all of which the Court rendered an opinion on the 15th day of December, 1955, which is as follows:

"Opinion—See pp. 69 thru 79.

"It appears that the Gentry Chevrolet Co., Inc. never had title to the automobile in question and has no valid claim to said automobile.

"In regard to the conflict as to the superiority of liens, the Court is of the opinion that the lien of the Southern Acceptance Corporation is superior to that claimed by the Manufacturers Acceptance Corporation, and, furthermore, it is the only valid lien of record.

"The Court is of the opinion that the General Motors Acceptance Corporation was in no way guilty of any negligence or violation of the requirements of the Motor Vehicle Title and Registration Acts, and it is therefore, absolved of any liability.

"As to the liability of the defendant, M. L. Potter, Notary Public, and his surety, Great American Indemnity Company, the Court is of the opinion that his actions did not cause any of the losses involved in this matter, and he is also absolved of any liability.

"A pro confesso was taken by both Gentry Chevrolet Co., Inc. and Manufacturers Acceptance Corporation as to the defendant, Raymond Vaughn, and they both are entitled to recover from him.

"It is, therefore, ordered, adjudged and decreed that:

"1. The cross-complainant, Southern Acceptance Corporation, is entitled to satisfy its judgment of Seven Hundred Ninety-six and 14/100 Dollars ($796.14) which has been obtained in the Justice of the Peace Court of Marion County, Tennessee under

the terms and provisions of the chattel mortgage which it now holds.

"2. The Gentry Chevrolet Co., Inc. is entitled to recover the amount of One Thousand Six Hundred Thirty-nine and 44/100 Dollars ($1,639.44) from the defendant, Raymond Vaughn.

"3. The Manufacturers Acceptance Corporation is entitled to recover the amount of One Thousand Two Hundred Sixty-eight and 16/100 Dollars ($1,-268.16) from the defendant, Raymond Vaughn.

"4. The General Motors Acceptance Corporation is absolved of any and all liability as to the Gentry Chevrolet Co., Inc. and the Manufacturers Acceptance Corporation.

"5. The defendant, M. L. Potter, Notary Public, and his surety, the Great American Indemnity Co., are absolved of any and all liability as to the Gentry Chevrolet Co., Inc., Manufacturers Acceptance Corporation and the Southern Acceptance Corporation.

"6. The costs of the cause are to be paid by the defendant, Raymond Vaughn, for which execution may issue; however, if there be any excess from the sale of the automobile in question, over and above the amount of the lien of the Southern Acceptance Corporation, said excess is to be paid over to the Clerk and Master to be applied on the costs of the cause.

"The complainant, Manufacturers Acceptance Corporation, and the cross-complainant, Gentry Chevrolet Co., Inc., excepted to the holdings and decree of the Court in all matters adverse to its insistences set out in its pleadings and proof and now

except and pray and are granted an appeal to the next term of the Court of Appeals, sitting at Nashville, Tennessee, and, upon motion, are allowed 30 days from the entry of this decree, within which to file an appeal bond, and otherwise perfect same.

"H. J. Garrett

Chancellor".

## II

### Assignments of Error

Counsel for Gentry Chevrolet Co. made eight assignments of error, some of which will be disposed of in this section of the opinion, others will be discussed hereinafter in section IV of the opinion.

*Assignment No. 1,* is to the effect that the Court erred in ruling that Southern Acceptance Corp. was entitled to possession of the automobile as against Gentry and in failing and refusing to sustain Gentry's cross-bill as to Southern and Manufacturers Acceptance Corp.

This assignment will be discussed in section IV.

*Assignment No. 2,* is to the effect that the Court erred in holding that Gentry had failed to fully comply with the Motor Vehicle Title and Registration Statute.

This will be discussed in section IV.

■ *Assignment No. 3,* states that the Court was in error in holding that Gentry, at the time of sale of the automobile to Vaughn, took a chattel mortgage on same to secure the unpaid purchase money.

While the evidence shows that Gentry took from Vaughn a title retention note rather than a chattel mort-

gage, the mistake in designating same as a chattel mortgage is, in our view of the case, immaterial. From the facts and circumstances appearing in the record, the net result is the same, in so far as the rights of Gentry Chevrolet Co. are concerned, and it results that this assignment is overruled.

▇ *Assignments Nos. 4, 5, 6, and 7,* deal with the Court's opinion and decree with respect to the non-liability of G.M.A.C.

Assignment No. 4, states that the Court was in error in holding that the fraudulent and criminal acts of Vaughn constituted an independent intervening act beyond the reasonable foresight and anticipation of G.M. A.C.

Assignment No. 5, complains of the Court's ruling to the effect that G.M.A.C. was without negligence or breach of duty in mailing the title certificate to Cookston rather than to Gentry.

Assignment No. 6, complains that the Court erred in failing and refusing to find as a fact that G.M.A.C. was the holder of the Cookston lien by assignment of Gentry and with full recourse and with right of repurchase by Gentry.

Assignment No. 7, is that the Court erred in failing and refusing to find as a fact that Gentry expressly made demand of G.M.A.C. to return the lien and other papers held by it, to Gentry.

In view of the fact that the statute makes it the duty of a lien holder to return the title certificate to the owner when the lien is discharged, and in view of the further fact that, on the face of the certificate, the owner was

W. L. Cookston and not Gentry Chevrolet Co.: and, since Gentry's cross-bill charged that, "Under normal and accepted business practice, Cookston's certificate of title and release of lien should have been forwarded by G.M.A.C. to the defendant, but instead of forwarding said certificate of title and release to this defendant, the General Motors Acceptance Corp. negligently forwarded same to W. L. Cookston," and said cross-bill was never amended so as to set forth the position that was relied on at the hearing to-wit: that the Gentry Chevrolet Co. had specifically requested or demanded that G.M.A.C. forward the title certificate to it; and, finally, in view of the intervening independent causes that had to do with the loss of the title certificate to Gentry, which were not attributable to G.M.A.C., we are of opinion that the Chancellor reached the correct result with regard to this defendant and therefore these assignments are overruled.

Assignments No. 8, avers that the Court erred in finding and decreeing that the negligent acts and wilful failure of M. L. Potter to perform his duty as a Notary Public, was not a proximate cause of the loss and damage sustained by Gentry, and in adjudging non-liability on the part of said Notary and his surety.

This will be discussed in section V.

Counsel for Manufacturers Acceptance Corp. assigned two errors.

*Assignment No. 1,* is to the effect that the Court erred in ruling and holding that Southern Acceptance Corp. was entitled to the possession of the automobile in question as against Manufacturers Acceptance Corp. and in failing and refusing to sustain the complainant's original

bill, as amended, as to Gentry Chevrolet Co. and Southern Acceptance Corp.

*Assignment No. 2,* avers that the Court erred in finding and decreeing that the negligence and wilful failure of M. L. Potter to perform his duty as a Notary Public was not a proximate cause of the loss and damage sustained by M.A.C., and in adjudging non-liability on the part of said Potter and the surety on his official bond.

These assignments will be discussed in sections IV and V.

### III

The pertinent sections of the Title and Registration Law, Williams Annotated Code secs. 5538.101 et seq. (T. C. A. sec. 59-101 et seq.) provides:

Sec. 5538.148(59-319 T. C. A.) ''Transfer of title. —(a) In order to transfer title to any motor vehicle coming within the title provisions of this act, the owner shall endorse an assignment and warranty of title upon the certificate of title, if in his possession, for such vehicle with a statement of all liens or encumbrances thereon, which statement shall be verified under oath by the owner, and he shall deliver the certificate of title and title card to the purchaser or transferee at the time of delivering the vehicle, except as hereinafter provided in sec. 57 (sec. 5538. 157).

Subsec. (b) provides that where the certificate of title is held by a lienor the owner may execute and deliver to the transferee a separate bill-of-sale which shall show the name and address of the lienor and such other information as may be required by the Commissioner.

Sec. 5538.150(59-321, T. C. A.) entitled "Transfers to dealers", provides that when the transferee is a dealer who holds the vehicle for re-sale, he shall not be required to obtain a new registration or a new certificate of title to same but, upon transferring to another, shall execute an assignment and warranty of title upon the certificate of title if in his possession, or if in possession of a lienor, he shall execute and deliver a bill of sale acknowledged before a Notary.

Sec. 5538.153(59-324, T. C. A.) provides for the noting of liens on the certificate of title and requires the forwarding of the certificate with proof of lien to the Motor Vehicle Division of the State for such purpose, and provides for notice to lienors who are not in possession of the certificate of title.

Sec. 5538.168(59-326, T. C. A.) "Filing liens and encumbrances.—No conditional sales contract, chattel mortgage, or other lien or encumbrance or title retention instrument upon a registered vehicle, other than a lien dependent upon possession entered into after the effective date of this act shall be valid against the creditors of an owner or subsequent purchasers or encumbrances until the requirements of this article have been complied with, unless such creditor, purchaser, or encumbrancer has actual notice of the prior lien." (1951, ch. 70 sec. 68.)

Sec. 5538.169(59-327, T. C. A.) "Filing request for notation.—(a) Such filing and the notation of the lien or encumbrance upon the certificate or title as provided in this act shall constitute constructive notice of all liens and encumbrances against the vehicle described therein to creditors of the owner, to subse-

quent purchasers and encumbrances except such liens as may be authorized by law dependent upon possession. Constructive notice shall date from the time of receipt and filing of the request for the notation of said lien or encumbrance upon the certificate of title by the division as shown by its endorsements thereon.

"(b) The method provided in this article of giving constructive notice of lien or encumbrance upon a motor vehicle subject to the provisions of this act, relative to the issuance of certificates of title, shall be exclusive except as to liens dependent upon possession, * * *."

## IV

The Chancellor in his opinion dealt with the respective parties and their contentions in the following order;

1. Gentry Chevrolet Company

2. General Motors Acceptance Corporation

3. Manufacturers Acceptance Corporation

4. Southern Acceptance Corporation

5. M. L. Potter, the Notary Public and the surety on his official bond.

We will consider the parties and their contentions in the same order.

1. As to the *Gentry Chevrolet Company*. From the facts as above outlined it will be seen that the Gentry Chevrolet Company did not comply with the provisions of the Tennessee Title and Registration law with respect to

the transfer of title upon selling and later re-acquiring, the car in question in this litigation.

Code sec. 5538.148(a) and (b), provides the exclusive method by which the transfer of title to any motor vehicle coming within the provisions of the Act shall be accomplished, and it is obvious that the Gentry Chevrolet Co. did not comply with those provisions.

■ It is insisted by counsel for said company that, as a dealer, it was exempt from the foregoing section of the law because, it is said, sec. 5538.150 deals especially with the transfer of title to dealers. But when this Code sec. (5538.150) is read in pari materia with sec. 5538.148 it is seen that it is necessary to have the title transferred to the dealer, who in turn may execute a warranty title on the certificate, if in his possession, or on a bill of sale to be delivered to the person to whom transfer is made, together with the dealer's evidence of ownership, which must be acknowledged before a Notary Public.

Gentry did not comply with these provisions and never did perfect title to the car as provided in the Title and Registration Law of Tennessee.

■ The Chancellor found that the action of Gentry in failing to obtain the necessary transfer from Cookston and in failing to make reasonably diligent efforts to acquire the title certificate from Cookston, or to make it clear to him that same was required to be delivered to Gentry, constituted negligence, which proximately caused or contributed to the loss, and we concur in this conclusion.

It is pointed out in the Chancellor's opinion that Gentry issued a bill of sale and took a chattel mortgage

(they took a title retained note from Vaughn) before they actually had title to the property, and without having the title certificate to note their lien thereon, and took no steps to have it noted thereon, and that Gentry surrendered possession of the automobile without an assignment of the certificate from Cookston, the owner, either to themselves or to the new purchaser, and, apparently, made no serious effort to do so. The Chancellor pointed out that the sale was made to Vaughn on August 16, 1954, and three months later, to-wit; on November 8, 1954, Gentry was still in the dark as to the whereabouts of the title certificate.

Under sec. 5538.168 of the Code providing for the method of filing liens and encumbrances. No conditional sales contract, chattel mortgage or other lien or encumbrance on a registered vehicle, other than a lien dependent on possession, is valid against the creditors of an owner or subsequent purchaser or encumbrancer unless the requirements of the act are complied with, or, unless such creditor, purchaser or encumbrancer has actual notice of the prior lien.

Finally, as regards the forgery of Henderson, if, Gentry had complied with the law affecting titles and title transfers and, in spite of such compliance, had lost the title by a forged transfer, the forgery would have been ineffective to deprive them of title. But where their failure to comply with the law set in motion the events that led to their loss and directly caused or contributed to it and resulted in claims of innocent third parties conflicting with Gentry's claim to the title, a court of equity will apply the maxim, ''Where one of two persons must suffer loss, he should suffer whose act or neglect occa-

sioned the loss.'' Gibson's Suits in Chancery, Higgins & Crownover Ed., sec. 52.

We agree with the Chancellor that Gentry's lien is not enforceable as against that of Southern Acceptance Corp.

2. As to the controversy between General Motors Acceptance Corporation and the other parties, the Chancellor was of opinion that the G.M.A.C. complied with the law in forwarding the title certificate to Cookston whose name appeared on said certificate as the owner. As hereinabove stated, we agree with this conclusion of the Chancellor and hold that General Motors Acceptance Corp. is not liable to any of the other parties.

3. As to the claim of Manufacturers Acceptance Corp. hereinafter referred to as M.A.C., this party advanced Vaughn $600.00 on one occasion and about $400 on another on the security of the car in question. As evidence of his title they accepted a mere copy of an application for title transfer, which was made before the County Court Clerk to be forwarded to the Motor Vehicle Division in Nashville.

After M.A.C. had made the loan or loans to Vaughn, it was some three weeks before it forwarded the application for notation of the lien to the Motor Vehicle Division, as provided by law.

*Sec. 5538.153* provides the method by which the noting of liens on certificates of title shall be accomplished.

As is pointed out by the Chancellor the procedure followed by M.A.C. was irregular in so far as the Statute is concerned. The Act requires the filing of the instrument creating the lien, with the certificate of title, except where there is a prior lien and the certificate is in pos-

session of the prior lienholder. In this event the Motor Vehicle Division recalls the title certificate in order to note the lien thereon.

M. A. C. had no right under the law to rely on a copy of the application for title in the first instance. If its agents had insisted on having the certificate of title itself, either the loan would not have been made, or the lien would have been properly recorded as the first lien with consequent notice to the world.

The Chancellor was of the opinion that the negligence of Gentry Chevrolet Company and the Manufacturers Acceptance Corp. in failing to comply with the provisions of the Statute gave Vaughn the idea that he could perpetrate such an act as the one that he did perform.

The forged assignment of the certificate was not the occasion of the loss to M. A. C. but it was their failure to comply with the Statute which occasioned their loss.

We concur with the Chancellor in his conclusion with respect to the position of Manufacturers Acceptance Corp.

4. As to Southern Acceptance Corp. (hereinafter referred to as S. A. C.), it is said that this party is not on an equal footing with M. A. C. because the latter's lien was prior in time.

The Chancellor was of opinion that the S. A. C. was the only lienor in the lawsuit that was on solid footing. It is pointed out that Code sec. 5538.169(a) provides for filing request for a notation of lien and that such notation, when made, is constructive notice to the world of the existence of the lien. Such constructive notice dates from the time of the filing of the request for notation of

the lien on the certificate of title, with the Division as shown by its endorsement thereon. S. A. C. demanded and received from Vaughn the original certificate of title before they made the loan to him. They promptly forwarded this to the Motor Vehicle Division in Nashville for recording. Their lien appears on the title certificate as the only lien thereon. As was said by the Chancellor, S. A. C. having obeyed the law is entitled to the protection of the law. The maxim "Where two innocent persons must suffer by the wrongdoing of the third, he who arms the wrongdoer with the power to commit the wrong must suffer its effects," applies here. The Chancellor found that the Southern Acceptance Corp. is entitled to the vehicle involved herein and we concur in this conclusion.

### V

As to M. L. Potter, the Notary Public, and the surety on his official bond; as seen hereinabove, the defendant, Ray Vaughn, (or Roy Vaughn) procured one William Henderson to go with him before this Notary Public and sign or forge the name of W. L. Cookston thereon in transferring said certificate from Cookston to Vaughn.

Mr. Potter testified that he is in the used car business; that he did not know W. L. Cookston but that Vaughn introduced the man to him as W. L. Cookston. He stated that he knew Vaughn and had known him for some time as a friend of Mr. Potter's business partner. He was acquainted with the procedure followed in buying or selling an automobile, where there is an indebtedness on it, as to who receives the title papers, etc. He stated that the man introduced to him as Cookston had in his possession the

title certificate and this certificate showed no lien on the car at the time. He further testified that the man representing himself as W. L. Cookston brought with him, by way of identification, a letter of recommendation and a credit card. His ex-partner who was a friend of Vaughn's was also present and stated to the Notary that "He is all right". The introduction and formalities having been gone through with, the man representing himself as Cookston signed the card in his presence. He further stated that all the identification that a dealer or Notary Public usually requires in a transaction of this sort is the title certificate in the possession of the party representing himself the owner. Vaughn was in possession of the car and he introduced Henderson as W. L. Cookston, who was apparently owner of the title certificate.

When asked if the party representing himself as Cookston swore to the instrument, Mr. Potter answered that he did not swear him but had him subscribe or sign the papers; that he didn't know whether this instrument had a sworn statement on it or not. On re-cross examination he was asked whether he had the man stand and hold up his hand to administer the oath to him and he answered, "No, sir".

The Chancellor in dealing with this phase of the case stated in his opinion as follows:

"However, in a case such as this, where the jurat was regular on its face and the fraud later admitted, it would appear that it is immaterial whether the jurat was sworn or unsworn. It would still be a forgery. The mere act of swearing would not have ferreted out the concealed criminal intent at the time

and erected a barrier to the fraud. The statement 'with whom I am personally acquainted,' would have. But this under the title law and for the purpose of the assignment was not required. The Court feels that the true test of Potter's liability is whether or not his failure to swear the forger resulted in the losses complained of. Was it the proximate cause? As already pointed out, the mere act of swearing would not have made it any less a forgery. His (Potter's) act of omission was merely an adjunct in a series of events operating under the concealed criminal intent of Vaughn that led to the same conclusion. For the foregoing reasons the Court is constrained to the view that Potter is not liable to anyone even though he was in technical violation of the law when he failed to swear the forger.''

The applicable law in this state is clearly stated in Figuers v. Fly, 137 Tenn. 358, 193 S. W. 117; and in the more recent case of State ex rel. First Trust & Savings Bank v. Easley, 176 Tenn. 185, 140 S. W. (2d) 149.

In Figuers v. Fly it was said:

''The taking by a notary public of an acknowledgment to a trust deed by one who is not the grantor, in which acknowledgment the notary recited that the person making it was a person with whom he was personally acquainted, is a ministerial, not a quasi judicial, act so far as to render the notary liable on his bond for his negligence, if any.

\*     \*     \*     \*     \*     \*

''In the absence of statute, a notary is held to the care and diligence of a reasonably prudent man to

ascertain the acknowledger's identity, but is not an insurer of the truth of the recitals.''

In State ex rel. First Trust & Savings Bank v. Easley it was held:

"Under the statute making every official bond obligatory on the principal and sureties thereon and for use and benefit of every person that is injured by any wrongful act committed under color of office or by failure to perform or the improper or neglectful performances, of duties imposed by law any person injured by false and negligent authentification of an instrument by an notary public has an action on notary's bond for damages proximately resulting and immediate parties to the instrument are not sole beneficiaries of the statute.''

Under the above facts we are unable to say that the Notary failed to exercise ordinary care in the matter of identifying the man who was introduced to him as W. L. Cookston, and who signed Cookston's name on the title certificate.

We are also in agreement with the Chancellor that the failure of the Notary to require the man to hold up his right hand and go through the formality of swearing, is not a proximate cause of the losses herein complained of.

The form signed by the imposter, Henderson recites, "Sworn to and subscribed before me''. While the Notary did not call this to his attention, we must assume that he knew what he was signing, and, in no event, could he or Vaughn be heard to deny the effect of his act. Hence, it is not shown that the mere failure to swear him changed

or affected the results in so far as the complaining parties are concerned.

As stated in Am. Jur. Vol. 1, p. 328:

"By the weight of authority, the record of an instrument with a defective acknowledgment, where the defect is not apparent on the face of the instrument is constructive notice". Citing many cases from numerous jurisdictions.

But suppose W. L. Cookston, at Vaughn's request, had signed the title certificate after it was returned to him, as he might have done with impunity in the absence of notice of Gentry's retention of title, the subsequent actions of Vaughn would have been the same, and with the same results to the parties involved.

It results that the assignments of error as to the Chancellor's action in holding that the Notary Public is not liable, are overruled.

As was stated in the Chancellor's opinion and decree Vaughn's liability is admitted and all parties suffering damages are entitled to judgment against him.

It results that all assignments are overruled and the judgment of the trial Court is affirmed.

The costs in the lower Court will remain as adjudged by that Court.

The costs on appeal are adjudged against the two appellants and the sureties on their appeal bonds in equal amounts.

Affirmed.

Felts and Hickerson, JJ., concur.