In re CUSTOM CAPS, INC., Bankrupt.

In re Robert Lee SHELTON, Bankrupt.

In re Patricia Ann SHELTON, Bankrupt.

C. Kenneth STILL, Trustee, Plaintiff,

v.

COMMERCE UNION BANK OF NASHVILLE and Shelton Oldsmobile-Pontiac-Buick-GMC Truck Co., Defendants.

Bankruptcy Nos. BK–1–79–811 to BK–1–79–813.

United States Bankruptcy Court, E. D. Tennessee.

Oct. 10, 1979.

Kyle R. Weems, Weill, Ellis, Weems & Copeland, Chattanooga, Tenn., for plaintiff.

Vanessa A. Henry, Henry & McCord, Tullahoma, Tenn., for defendants.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The trustee in bankruptcy in the three captioned cases filed a complaint against the defendants to sell a truck free of any security interest claimed by them and to determine the enforceability of their claimed security interest.

On or about March 26, 1979, the defendant-seller, Shelton Oldsmobile-Pontiac-Buick-GMC Truck Company, sold a truck, a 1976 Chevrolet Blazer, serial number CKL186F178922. In its sales contract the seller retained a security interest. The seller sold the sales contract to Commerce Union Bank, the other defendant, with recourse. When the bankrupt failed to pay, the seller therefore paid the bank and is now the proper party. Commerce Union Bank did not answer the complaint.

The sales documents do not make it clear whether the truck was sold to Robert Lee Shelton or to Custom Caps, Inc. But the court need not decide that issue until it has determined whether or not the defendant's security interest is enforceable against the trustee. In any event it was sold to one of the bankrupts.

On the date of bankruptcy, June 12, 1979, in all three cases, Robert Lee Shelton held the outstanding certificate of title to the truck. It was the "title" that he received from the defendant-seller and showed on the back an assignment to. the seller. Robert Lee Shelton also had a bill of sale from the seller to Custom Caps, Inc.; it showed that a lien existed in favor of Commerce Union Bank. With these he was supposed to apply for a new certificate of title in his name with the lien noted in the bank's favor. He did not do so before bankruptcy.

Article 9 of the U.C.C. as enacted in Tennessee is codified in §§ 47–9–101—9–507, Tenn.Code Ann. (1979 Repl. Vol.). For convenience sections of Article 9 will be referred to by U.C.C. section numbers only.

Section 9–102 provides, with some exceptions not pertinent to this case, that Article 9 of the U.C.C. applies to any transaction

intended to create a security interest in personal property within the jurisdiction of Tennessee. Article 9 applies to the transaction in question.

Section 9–302(3) provides that the filing provisions of Article 9 do not apply to property subject to a statute requiring indication of a security interest on the certificate of title.

Tennessee has such a statute. Section 59–301, Tenn.Code Ann. (Supp.1978), provides in part:

> Every motor vehicle, when driven or moved upon a highway . . . shall be subject to the registration and certificate of title provisions of chapters 1 through 6 of this title . . . .

The section goes on to list exceptions not applicable to this case.

Section 59–327(a) provides essentially that notation of a security interest on the certificate of title is constructive notice of the security interest to the owner's creditors, subsequent purchasers, and subsequent encumbrancers (with some exceptions). Section 59–327(b) provides that as to motor vehicles subject to the certificate of title act indication of a lien on the certificate of title is the *exclusive* method of giving constructive notice of the lien (again with some inapplicable exceptions).

In this case the security interest was not noted on the certificate of title. The question before the court is what is the affect of this failure on the seller-secured party's rights as against the trustee in bankruptcy.

■ Under § 70c of the Bankruptcy Act (11 U.S.C. § 110) the trustee in bankruptcy has the rights of a creditor with a perfected judgment lien on the bankrupt's property subject to such a lien. The trustee is deemed to have extended credit and obtained the lien on the date of bankruptcy and to be without notice of any other liens on property subject to. his hypothetical lien. 4B Collier on Bankruptcy ¶ 70.49 (14th ed. 1967).

■ Section 59–326, Tenn.Code Ann. (Supp.1978), provides:

No conditional sales contract, chattel mortgage, or other lien or encumbrance or title retention instrument upon a registered vehicle, other than a lien dependent upon possession . . . or a lien of the state for taxes . . . shall be valid against the creditors of an owner or subsequent purchasers or encumbrancers until the requirements of this section and § 59–327 have been complied with, unless such creditor, purchaser, or encumbrancer has actual notice of the prior lien.

Under § 70c of the Bankruptcy Act the trustee is a lien creditor without notice of the defendant-seller's prior lien. The defendant-seller's security interest therefore is not valid against the trustee in bankruptcy.

■ Likewise, U.C.C. § 9–301(1)(b) provides that an unperfected security interest is subordinate to the rights of "a person who becomes a lien creditor without knowledge of the security interest and before it is perfected." Section 9–301(3) defines lien creditor to include a trustee in bankruptcy. Under § 70c of the Bankruptcy Act he is deemed not to have knowledge of prior security interests. 4B Collier ¶ 70.53 at 636–637. And U.C.C. § 9–301(3) makes it clear:

> Unless all the creditors represented had knowledge of the security interests such a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest.*

Furthermore, no notice given to a receiver or trustee in bankruptcy after he assumes that position can negate his status as. an "ideal" lien creditor under § 70c. 4B Collier ¶ 70.53 at 639–640.

■ The defendant-seller also argued that the lien notation on the bill of sale was sufficient notice. Section 59–327, Tenn. Code Ann., of course, says that notation on the certificate of title is the *exclusive* method of giving constructive notice. Judge

---

\* If all creditors had knowledge of the security interest the trustee would still be deemed not to

have knowledge because that attribute does not derive from state law but from § 70c.

Taylor said in *In re Crosson*, 226 F.Supp. 944 at 947 (E.D.Tenn.1963):

> The fact that the lien . . . appeared on the notarized bill of sale is not sufficient to give notice to creditors. The statute says the lien must be endorsed on the certificate of title.

That is still the law in this state.

 It is well-established in this court that under Tennessee law a security interest in a motor vehicle (other than inventory) *is not* enforceable against the trustee in bankruptcy unless the security interest is indicated on the outstanding certificate of title. Besides *In re Crosson*, cited above, see *In re Wallace*, 251 F.Supp. 581 (E.D. Tenn.1966); *In re Russell*, 300 F.Supp. 6 (E.D.Tenn.1969).

 The defendant-seller has argued that these decisions ignore the fact that the Tennessee statutes put the burden on the transferee to obtain a certificate of title. It is reasonable that the transferee should have the burden of obtaining a certificate of title for his own purposes. A transferor, having given up title, has no interest in obtaining a new certificate of title except to be sure that its lien is noted. The statute thus generally puts the burden on the transferee to obtain a new certificate and leaves a secured creditor to its own methods to see that its lien is indicated on the certificate of title.

The defendant relied on *In re Littlejohn*, 519 F.2d 356 (10th Cir. 1975), decided under Kansas law. On facts essentially the same as in this case the court held that the lienor prevailed over the trustee in bankruptcy. The case raises interesting questions. Will the rule followed by that court put the burden on the innocent purchaser from an owner who fraudulently obtains a certificate of title without a lien noted rather than on the lienor who gave the owner the opportunity to commit the fraud? Are the lien notation provisions of a certificate of title act really meant to protect general creditors or only subsequent purchasers and lienors? In any event, the court need not answer those questions.

In Kansas there apparently is no equivalent to § 59–326 of the Tennessee Code. Under § 59–326 a lien not indicated on a certificate of title is invalid against creditors of the owner or subsequent purchasers or encumbrancers. The court is not dealing with only U.C.C. § 9–301(1)(b). The secured creditor in Tennessee must act to see that its security interest in a motor vehicle is noted on the certificate of title.

One question remains. Which bankrupt, Robert Lee Shelton or Custom Caps, Incorporated, was the owner of the car at the time of filing bankruptcy.

Section 59–319, Tenn.Code Ann. (1968 Repl. Vol.), provides two methods for transferring title. An owner may indorse a verified assignment and warranty of title on the certificate of title or, if the certificate of title is being held by a lienor, the owner may execute and deliver a bill of sale with all the required information. In this case, even though the seller had the certificate of title, it did not execute the assignment on the back. It did deliver the certificate to Robert Lee Shelton. It also executed a bill of sale with the appropriate information but apparently it was not notarized.

The bill of sale was made out to Custom Caps, Inc. It is not disputed that Robert Lee Shelton was an officer of Custom Caps, Inc. The applicant's name on the "Purchaser's Statement" is given as Robert L. Shelton d/b/a Custom Caps. Robert L. Shelton's wife answered the "Co-Applicant's" questions but did not sign the installment sales contract. Robert L. Shelton signed the statement without indicating that he was acting for Custom Caps. The installment sales contract shows the buyer as Robert L. Shelton, d/b/a Custom Caps, Inc. He signed the contract on the buyer line without indicating that he was acting for Custom Caps.

Robert L. Shelton testified that he intended that Custom Caps own the truck. Joe Powell Shelton testified for the defendant-seller that it intended to sell the truck to Custom Caps.

The court is of the opinion that the truck belonged to the bankrupt, Custom Caps, Inc., on the date of bankruptcy. Failure to comply with the certificate of title statute does not prevent title from passing to the transferee. *Stevens v. State Farm Mutual Automobile Insurance Co.*, 59 Tenn. App. 701, 443 S.W.2d 512 (1969); *Hayes v. Hartford Accident and Indemnity Co.*, 57 Tenn.App. 642, 417 S.W.2d 804 (1967). Title to goods generally passes according to the agreement of the parties. § 47–2–401, Tenn.Code Ann. (1979 Repl. Vol.) The parties intended to pass title to Custom Caps by their transaction. The documents sufficiently indicate that Custom Caps, Inc., was the intended transferee.

The truck has already been sold. In accordance with this memorandum the trustee in bankruptcy for Custom Caps, Inc., is entitled to the proceeds.

An order will be entered accordingly.

This memorandum constitutes findings of fact and conclusions of law pursuant to Rule 752 of the Bankruptcy Rules.

### ORDER

In accordance with the court's memorandum of this date,

Defendant, Shelton Oldsmobile-Pontiac-Buick-GMC Truck Company, is an unsecured creditor and its claim # 13, in the amount of $3,391.00, will be allowed as unsecured. The proceeds of the sale of the 1976 Chevrolet Blazer, serial number CKL186F178922, will be retained by C. Kenneth Still, trustee, as an asset of the estate in bankruptcy of Custom Caps, Incorporated.

It is so ordered.

