**In re James Thomas POTEET and Shirley Ann Poteet, Debtors.**

**Flossie WEILL, Trustee, Plaintiff,**

v.

**UNITED BANK OF CHATTANOOGA, Defendant.**

**Bankruptcy No. 1–80–00083.**
**Adversary Proceeding No. 1–80–0104.**

United States Bankruptcy Court,
E. D. Tennessee.

Aug. 13, 1980.

632

Kyle R. Weems, Chattanooga, Tenn., for plaintiff.

William C. Carriger, Chattanooga, Tenn., for defendant.

## INTRODUCTION

RALPH H. KELLEY, Bankruptcy Judge.

The plaintiff–trustee filed a complaint alleging that the defendant–bank perfected a security interest in the debtor's property within 90 days before bankruptcy and thereby received a "preferential transfer", which the trustee can avoid under § 547 of the Bankruptcy Code. 11 U.S.C. § 547 (1979).

The controversy involves a lien which was to be noted on a certificate of title to a trailer owned by the debtor. Normally the lien would have been perfected, at the latest, when the application for a certificate of title with the lien noted was received by the Motor Vehicle Division (MVD).

But the MVD received two applications for title in the debtor's name. The first application was received outside the preference period, that is, more than 90 days before bankruptcy. It was rejected by the MVD and returned to the bank.

The second application was received within 90 days of bankruptcy. It was approved

and a title was issued with the bank's lien noted.

The MVD also received an application for a certificate of title in the name of Celeryvale Transport, which had sold the trailer to the debtor.

■ The date on which the bank perfected its security interest determines whether its retention of the security interest was within the preference period of 90 days before the debtor's filing. 11 U.S.C. §§ 547(b)(4)(A) & (e)(2)(B) (1979).

## FACTS

The debtor bought the trailer from Celeryvale Transport, Inc., or from its owner, L. D. Miller. Miller arranged a loan for the debtor from United Bank, the defendant.

August 21, 1979, is the date of the loan and the security agreement. On the same day, application was made for a certificate of title in the debtor's name.

The Motor Vehicle Division rejected the application—"Rejected No. 66" is stamped on it. By letter of September 12, 1979, the MVD requested the bank to submit a notarized transfer of ownership (bill of sale) to debtor and a pencil tracing of the trailer's identification number.

It was not until December, 1979, that the requested documents were sent. The application was approved—"Approved No. 43". A certificate of title in the debtor's name, with the bank's lien noted, was issued on January 17, 1980.

When the application for title was originally sent in, there was also sent an application for title in the name of Celeryvale Transport. Like the debtor's application, it asked for the bank's lien to be noted on the certificate. It was not, however, signed by the owner and notarized.

Both applications were given the same numbers. Title No. 263225408 was stamped on each. Another number, R1937277, appearing at the bottom of debtor's applica-

tion, was written at the bottom of Celeryvale Transport's application. That number was also used in the letter requesting the bill of sale and the pencil tracing. Celeryvale Transport's application was also stamped "Approved No. 43". No certificate of title was ever issued to Celeryvale Transport.

The debtor filed a petition in bankruptcy, under Chapter 13 of the Bankruptcy Code, on January 14, 1980, but converted his case to a Chapter 7 case on January 30, 1980.

## DISCUSSION

■ Security interests in personal property, including motor vehicles, are governed by Article 9 of the Uniform Commercial Code (UCC). Tenn.Code Ann. §§ 47–9–101—9–507 (Repl. Vol.1979). There is, however, an exception as to perfection of security interests in motor vehicles. A security interest in a motor vehicle is perfected by compliance with the certificate of title law.[1] Tenn.Code Ann. Title 55, Chapter 3 (Repl. Vol.1980).

Section 55–3–126 provides essentially that a lien on a motor vehicle is perfected when the MVD receives the request for notation of the lien on the certificate of title. But a lienholder will not always file with the MVD a request for notation of a lien. The procedure for having a lien noted varies according to whether the MVD has previously issued a certificate of title and according to whether there was a transfer of the vehicle when the security interest was created. Cf. §§ 55–3–103(a)(3), 55–3–122, 55–3–123. The wording of § 55–3–126 may have been an oversight. Cf. § 55–3–125. The Tennessee Supreme Court has treated an application for a certificate with a lien noted the same as a request for notation of a lien. See *Personal Loan & Finance Corp. v. Guardian Discount Co.*, discussed below.

The question for this court to decide is which application perfected the bank's security interest. Was it the one which was

---

1. UCC § 9–302(3). Nevertheless, a security interest in motor vehicles held as inventory by a dealer may be perfected by filing a financing statement. *In re Vaughn*, 283 F.Supp. 730 (M.D.Tenn.1968).

rejected or the later one that was approved? Or was it the application for a certificate of title in Celeryvale Transport? Prior decisions offer some guidance but are inconclusive.

The present case differs from *In re Russell*, 300 F.Supp. 6 (E.D.Tenn.1969); *In re Wallace*, 251 F.Supp. 581 (E.D.Tenn.1966); *In re Crosson*, 226 F.Supp. 944 (E.D.Tenn. 1963); *In re Degalleford*, No. 1–79–01524, Adv.No. 1–80–0021 (Bankr.Ct.E.D.Tenn. March 26, 1980); and *In re Custom Caps, Inc.*, 1 B.R. 99 (Bkrtcy.E.D.Tenn.1979). In those cases the secured party did not apply for title *before* the debtor filed bankruptcy.

In *In re Kelley*, the application for title was made before the debtor's bankruptcy, but there was no problem with its sufficiency. A certificate of title was issued. *In re Kelley*, 3 B.R. 651 (Bkrtcy.1980).

That is also true of *Personal Loan & Finance Corp. v. Guardian Discount Co.*, 206 Tenn. 221, 332 S.W.2d 504 (1960). One creditor had levied on an automobile after the MVD received an application for title but before the MVD began processing the application. The court held that the security interest was perfected when the MVD received the application for title with the lien noted, and not at the later date when it processed the application. Since the application was in order when received, the court did not comment on whether a security interest is perfected when the MVD receives a defective application.

Several cases indicate that an encumbrancer should rely only on the certificate of title as evidence that a vehicle is free from liens where the encumbrancer knows or should know that there is an outstanding certificate of title. *Manufacturers Acceptance Corporation v. Bank of Knoxville*, 204 Tenn. 605, 324 S.W.2d 417 (1959); *Manufacturers Acceptance Corporation v. Vaughn*, 43 Tenn.App. 9, 305 S.W.2d 513 (Tenn.App. 1956). Those cases, however, could have been decided simply on the ground that the party who first perfects his security interests will prevail.

Other cases involve the rights of an unpaid seller against someone who buys a car from the defaulting buyer. *Hunter v. Moore*, 38 Tenn.App. 533, 276 S.W.2d 754 (1959); *Edwards v. Central Motor Company*, 38 Tenn.App. 577, 277 S.W.2d 413 (1954) aff'd 198 Tenn. 50, 277 S.W.2d 417 (1955). In those two cases the unpaid seller was attempting to recover the car. The seller won or lost according to whether he had given the buyer "indicia" of title on which the third person could justifiably rely. If the third person could and did rely, then the unpaid seller was estopped to deny that the buyer had good title.

Still other cases indicate that where a seller fails to provide a buyer with the documents necessary for him to obtain a certificate of title, then the buyer may rescind the sale because of the seller's breach of the implied warranty of title. *Schaeffer v. Richard*, 43 Tenn.App. 205, 306 S.W.2d 340 (Tenn.App.1956); *White v. Mid–City Motor Co.*, 39 Tenn.App. 429, 284 S.W.2d 689 (Tenn.App.1955).

This case differs. The seller was able to supply the debtor with the documents necessary to obtain a certificate of title, but the seller failed to provide them when the application for title was first made.

The certificate of title law provides that the MVD will issue a certificate of title in the applicant's name if satisfied that he is the owner. §§ 55–3–103(a)(4), ·55–3–112, 55–3–114(a), & 55–3–122. Likewise, on receipt of a request for notation of a lien, it will note the lien if the request meets its requirements as to proof of the lien.[2] § 55–3–123.

■ Generally a security interest is perfected by giving notice of its existence to third parties. J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code § 23–5 (2d ed. 1980). Notice is usually given by compliance with the recording provisions of Article 9 of the

---

**2.** In a situation like this, where there is an application for a certificate of title with a security interest noted, rather than a request for notation of a lien, it is not clear what proof of the lien the MVD requires. Compare § 55–3–103 and § 55–3–122. See also § 55–3–119.

UCC. UCC § 9–302. Of course, for motor vehicles an exception is made.

■ Nevertheless, as to notice, cases in which perfection of a security interest requires the filing of a financing statement are enlightening. "Filing" is defined as presentation of the financing statement and the required fee to the filing officer. UCC § 9–403(1). Filing is not defined as presentation of a correct financing statement. But the courts have consistently held that filing, as defined, does not necessarily perfect a security interest. A financing statement is supposed to give notice. To that end it must meet certain accuracy requirements imposed by Article 9. If it fails to do so, because of the secured party's mistakes, then the "filing" does not perfect the security interest. UCC § 9–402(5). See *In re Fowler*, 407 F.Supp. 799, 19 U.C.C.Rep.Serv. 322 (W.D.Okla.1975); *In re May Lee Industries, Inc.*, 15 U.C.C.Rep.Serv. 528 (U.S.D.C. S.D.N.Y.1974) *aff'd mem.* 15 U.C.C.Rep. Serv. 532 (U.S.C.A. 2d Cir. 1974); *In re Levins*, 7 U.C.C.Rep.Serv. 1076 (Bankr.Ct. E.D.N.Y.1970); *In re Brawn*, 6 U.C.C.Rep. Serv. 1031 (Bankr.Ct. D.Maine 1969).

■ Though receipt of the financing statement and the fee by the filing officer is "filing", the security interest is perfected only if the financing statement is substantially correct. Judge Cyr explained the definition of "filing" as follows:

> Of course, there can be no doubt under the Code that the presentation of this financing statement together with the filing fee, as well as the acceptance of it for filing, constituted "filing." For that matter, a literal construction of § 9–403(1) renders the acceptance by the filing officer of any statement a "filing." The purpose of this provision would seem to be to render certain the time when filing will be deemed to have occurred, as well as to absolve the secured party of responsibility for errors or omissions by the filing officer in such matters as indexing. . . .

*In re Brawn*, 6 U.C.C.Rep.Serv. 1031, 1037 (Bankr.Ct.D.Maine 1969).

The purpose of this provision of the certificate of title law appears to be the same. It provides a definite time when perfection occurs. "Constructive notice shall date from the time of receipt of the request for notation . . . upon the certificate . . . as shown by the [MVD's] indorsements . . . ." § 55–3–126. It does not say that notice is given by the receipt of a defective request. No certificate can be issued or lien noted when the request is defective.

The problem in this proceeding was caused by debtor's defective application for title. If it had been a defective request for notation of a lien, the situation would be more like the filing of a misleading financing statement. A request for notation of a security interest would normally be rejected because of some defect in the proof of the security interest. In both instances, the result would be the same. No title would be issued giving notice of the secured party's lien.

In this case debtor's application for certificate of title was rejected. It was insufficient for the MVD to determine that he was the true owner. There was no problem with proof of the bank's security interest. Should that make a difference?

There was no proof that when an application is rejected notice will somehow be given of security interests that were to be noted on the certificate. It is unlikely that there could be such proof. The rejected application in this case was in fact returned.

Consider an example. Suppose that an application for a certificate of title appears correct so that the MVD does not reject it, but the names are in the wrong places. The certificate when issued does not show the secured party as a lienholder. Was the security interest perfected by filing the incorrect application and then unperfected when the certificate was issued? Surely not. *In re Butler's Tire & Battery Co., Inc.*, 17 U.C.C.Rep.Serv. 1363 (Bankr.Ct.D.Ore. 1975) *aff'd* 18 U.C.C.Rep.Serv. 1302 (U.S.D. C.D.Ore.1976). A rejected application might never be corrected so that a certificate could be issued with the security inter-

636

est noted. As long as there is no outstanding certificate with the lien noted, the owner is left with the opportunity to mislead third parties.[3] Cf. *Manufacturers Acceptance Corporation v. Vaughn,* supra.

Another distinction might be argued. A secured party normally would file a request for notation of a security interest. On the other hand, when a vehicle is transferred, the owner–transferee is responsible for applying for a certificate of title in proper form, including the notation of liens. §§ 55–3–103 & 55–3–119.

■ This distinction is also unconvincing. When the rights of a third party intervene, the secured creditor bears the risk if the transferee does not perfect the security interest. *In re Custom Caps, Inc.,* 1 B.R. 99 (Bkrtcy.E.D.Tenn.1979). The secured party is ultimately responsible for protecting its security interest.

■ The court concludes that debtor's application for a certificate of title with the bank's security interest noted could not have perfected the bank's security interest when it was first received by the MVD. It could have perfected the bank's security interest only when it was submitted in proper form and approved sometime in late December, 1979, at the earliest.

■ The bank argues that Celeryvale Transport's application was approved at an earlier date than the debtor's application— apparently when it was received.

Celeryvale Transport's application was not stamped rejected as was debtor's application. Nevertheless, the other facts indicate that it was not approved until debtor's application was approved, sometime in late December, 1979 or in early January, 1980. Celeryvale Transport's application was defective. It was not signed and sworn to by the owner. Whoever made the application could not have expected the MVD to issue a title to Celeryvale but probably included it to show title in debtor. The MVD could not

legally have issued and did not issue to Celeryvale a certificate of title based on the application. Tenn.Code Ann. §§ 55–3–103(a), 55–3–112 (Repl. Vol. 1980). The MVD gave both applications the same identifying numbers. Both were stamped "Approved No. 43". The court infers that the MVD approved Celeryvale's application only as part of debtor's application and only when it was approved.

Celeryvale Transport's application could not have perfected the bank's security interest until it was approved—at the same time as the debtor's application.

■ The court concludes that the transfer occurred when the bank perfected its security interest in late December, 1979, at the earliest. That was within 90 days before debtor's bankruptcy on January 14, 1980.[4] The other elements of a preferential transfer under § 547(b) were not substantially in dispute. Delayed perfection of the security interest thus resulted in a transfer avoidable by the trustee as preferential. The trustee is therefore entitled to the trailer.

■ Unfortunately, the trailer has been stolen. The bank filed a counterclaim seeking to hold the trustee liable for the loss. The court has decided that the trustee's right to the trailer is superior to the bank's. The court is of the opinion that the trustee is not liable for the loss. The counterclaim is therefore dismissed without prejudice.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.

3. The court notes that the application was not based on already issued Tennessee certificate of title with the bank's lien noted.

4. The time is measured from when the debtor originally files a petition. 11 U.S.C. § 547(b)(4)(A) (1979). See also 11 U.S.C. § 348 (1979).