In re John Lewis HAYNES and Vera Mai Haynes, Debtors.

Robert H. WALDSCHMIDT, Trustee, Plaintiff,

v.

MIRACLE MOTORS, John Lewis Haynes, and Vera Mai Haynes, Defendants.

Bankruptcy No. 382–02008.
Adv. No. 382–0540.

United States Bankruptcy Court,
M.D. Tennessee,
Nashville Division.

Feb. 18, 1983.

Dick Eason, Nashville, Tenn., for debtors/defendants.

Robert H. Waldschmidt, Cosner, Waldschmidt & Crocker, Nashville, Tenn., Trustee.

Mose J. Davie, Nashville, Tenn., for Miracle Motors, Inc.

### MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The trustee seeks to avoid a security interest in an automobile and to recover payments made by the debtors as allegedly preferential transfers. The elements of a preference are present and not in dispute. The only issue remaining is whether the defendant, Miracle Motors, perfected its security interest within 10 days and, therefore, is protected by the exception to the trustee's avoiding powers contained in 11 U.S.C.A. § 547(c)(3) (West 1979). The defendant submits that it applied through the county clerk for a certificate of title noting its lien within 10 days and argues that submission of an application to the county

clerk is sufficient to perfect its security interest under Tennessee law. The trustee contends that perfection occurs only when the application is received by the Motor Vehicle Division of the Department of Revenue and that the defendant has not proven that the application was received within the requisite 10-day period. After consideration of the evidence, briefs, arguments and applicable authority, the court concludes that a security interest in a motor vehicle is perfected when the application is received by the Motor Vehicle Division. Because Miracle Motors offered no proof concerning the date its application was received, its security interest may be avoided as a preferential transfer. The vehicle and all pre-petition payments should be turned over to the trustee for administration.

The following constitute findings of fact and conclusions of law required by Rule 752 of the Federal Rules of Bankruptcy Procedure.

On April 12, 1982, the debtors purchased a 1974 Ford[1] from Miracle Motors. On April 19, 1982, the debtor paid the sales tax on the automobile. The debtors made numerous other payments on the automobile from April 12, 1982 through July 13, 1982.[2] Miracle Motors submitted an application for a certificate of title and vehicle registration on April 22, 1982 to the county clerk for Davidson County, Tennessee.

1. The trustee contends that the automobile involved is a 1974 Ford Granada. The title describes the automobile as a Ford Granada. The debtors' petition, the contract for sale and Miracle Motors' proof of claim, however, state that the automobile is a 1974 Ford Torino.

2. The trustee alleges that Miracle Motors received $970.75 in preferential payments. Miracle Motors disputes this amount and asserts that it received $560.75. The court finds from the payment card entered as part of the record that Miracle Motors received $930.75 from the debtors prior to the filing of their bankruptcy petition. The trustee has neither pleaded nor argued for recovery of postpetition payments pursuant to § 549 or any other provision of the Code.

3. The pretrial order dated October 27, 1982, stated the issue to be resolved at trial as: "Whether the date of perfection was within the

The debtors filed a Chapter 7 petition on June 23, 1982. The trustee was appointed June 24, 1982 and filed a complaint to set aside the security interest and payments as preferential transfers on August 18, 1982. A pretrial conference was held in chambers on October 26, 1982 with all counsel present. The 10-day perfection defense under § 547(c)(3) was identified as the only issue remaining for trial.[3] A trial was conducted December 9, 1982. All parties were afforded ample opportunity to present evidence. Neither party offered proof evidencing the date the application was received by the Motor Vehicle Division in Nashville.[4]

When the elements of a preference are present, a security interest is voidable unless the transaction comes within one of the savings provisions delineated in 11 U.S.C.A. § 547(c) (West 1979). The party asserting the application of an exception has the burden to prove the elements of the exception. 2 Norton Bankr.L. & Prac. § 32.12 at 37 (1981). The only exception available to the defendant is § 547(c)(3).[5] Section 547(c)(3) provides:

(c) The trustee may avoid under this section a transfer—

(3) of a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

requisite number of days of the date of the loan and security agreement to defeat the trustee's preference action under § 547." The basic elements of a preference action were not contested at trial. Evidence focused exclusively on the defense contained in § 547(c)(3).

4. The title was actually issued by the Motor Vehicle Division on May 4, 1982. The application was, therefore, received by the Motor Vehicle Division sometime between April 22 and May 4, 1982. The exact date is not apparent in the proof.

5. The court has held in *Waldschmidt v. Ford Motor Credit Co. (In re Murray)*, 27 B.R. 445 (Bkrtcy.M.D.Tenn.1983), that § 547(c)(3) is the exclusive exception available to creditors in enabling loan cases.

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected before 10 days after such security interest attaches.

This provision is referred to as the "enabling loan" exception. There is no question that the transaction is an enabling loan. The security interest was given to secure new value at the time the agreement was signed, was given to enable the debtor to obtain the automobile, and was actually used to acquire the automobile. The debtors incurred this obligation upon signing the sales contract on April 12, 1982.[6] The only remaining question is whether Miracle Motors satisfied § 547(c)(3)(B) which requires that the security interest be perfected within 10 days from the date the security interest attached.

In Tennessee, a security interest in a motor vehicle is perfected by notation of the lien on the certificate of title. *See* Tenn.Code Ann. § 55–3–125 (repl. vol. 1980). Tenn.Code Ann. § 55–3–103 (repl. vol. 1980) prescribes the procedure for obtaining a certificate of title when no certificate has previously been issued by the Motor Vehicle Division: [7]

(a) Every owner of a vehicle, subject to registration hereunder and for which no certificate of title has ever been issued by the division, shall make application to the county clerk of the county where the vehicle is to be registered . . . which said clerk or registrar of motor vehicles shall receive the said application for the issuance of a certificate of title for such vehicle upon the appropriate form or forms furnished by the department . . .

Miracle Motors alleges that this section makes the county clerk an "agent" for the Motor Vehicle Division and, therefore, receipt by the county clerk of the title application is sufficient to perfect defendant's security interest.[8] The trustee counters that perfection occurs only when the application is received by the Motor Vehicle Division in Nashville.

This issue was addressed some years ago in *Stair v. American Credit Co. (In re Orr)*, BK. NO. 3–77–620 (Bkrtcy.E.D.Tenn. May 30, 1978). In that case, Judge Bare discussed the competing theories of perfection and concluded that the title application must be received by the Motor Vehicle Division before perfection occurs.

---

**6.** Miracle Motors contends that the security interest did not attach until April 19, 1982 when the sales tax was paid. This dispute does *not affect the outcome because Miracle Motors* has not proven that it perfected within 10 days of that date. The court finds, however, that all documents creating the debt were signed on April 12 and that the certificate of title noting Miracle Motors' lien lists April 12 as the date the security interest was created. Therefore, the court is persuaded that the debt was incurred for purposes of the preference action on April 12, 1982. If attachment occurred at some later time, it was the defendant's burden to so prove.

**7.** Debra Liles, the president of Miracle Motors, testified that she had at times attempted to apply directly to the Motor Vehicle Division to secure the notation of liens. She had been instructed that the proper procedure was to fill out an application with the county clerk and have the application forwarded to the Motor Vehicle Division.

**8.** Tenn.Code Ann. § 55–6–104 (repl. vol. 1980) does provide that:

[T]he county clerks as deputies to the registrar of motor vehicles shall, upon the performance of such duties as the registrar may prescribe under the laws governing the titling and licensing of vehicles and upon complying with the requirements of this chapter, be entitled to the following fees from applicants for the following services:

. . . . .

(3) For receiving and forwarding to the division each application for certificates of title . . .

The use of the word "deputies" does not create an "agency" relationship in the context Miracle Motors suggests. Although the clerks are empowered to *receive* applications, they are merely conduits to the Motor Vehicle Division. Perfection dates only from the date of receipt *and* filing by the Motor Vehicle Division. The county clerk's responsibility is statutorily limited to that of registrar. The responsibility of filing and indexing liens is the exclusive province of the Motor Vehicle Division.

The trustee insists that the transfer (perfection of American Credit's security interest) occurred on October 11, 1977, when the application was received in the Office of the Motor Vehicle Division in Nashville. American Credit insists that the transfer occurred on October 4, 1977, when the application was received in the office of the County Court Clerk in Maryville, the "designated agent" of the Motor Vehicle Division. As heretofore indicated, I conclude that the date of transfer is October 11, 1977.

*In re Orr,* slip op. at 18. Judge Bare rejected the proposition that a lien is perfected when the application is accepted by the county clerk. Judge Kelley has similarly noted that "a lien on a motor vehicle is perfected *when the MVD receives* the request for notation of the lien on the certificate of title." *Weill v. United Bank (In re Poteet),* 5 B.R. 631, 633 (Bkrtcy.E.D.Tenn. 1980) (emphasis added).

The court holds that the analysis in *Orr* and *Poteet* is the most reasonable interpretation of the certificate of title law. The statute specifically provides that "constructive notice shall date from the time of receipt and filing of the request for the notation of said lien or encumbrance upon the certificate of title *by the division* as shown by its indorsements thereon." Tenn.Code Ann. § 55–3–126 (repl. vol. 1980). The statute makes no provision or allowance for any other agency to satisfy the notice requirement. Decisions of the Tennessee state courts confirm that the statute creates an exclusive means of perfection requiring action to be taken by the Motor Vehicle Division in Nashville. *See Personal Loan and Finance Corp. v. Guardian Discount Co.,* 206 Tenn. 221, 332 S.W.2d 504 (Tenn.1960); *Manufacturers Acceptance Corp. v. Vaughn,* 43 Tenn.App. 9, 305 S.W.2d 513 (Tenn.App.1957). The exclusivity is necessary to facilitate notice to potential creditors. Under Tenn.Code Ann. § 55–3–103, owners of vehicles may apply to any of the 95 county court clerks throughout the state without regard to the actual residence of the applicant. It is commercially absurd for a purchaser or creditor to direct inquiries to all county clerks in the state to elicit information concerning a possible outstanding lien. If a prospective purchaser or potential creditor is to determine whether or not a particular motor vehicle is encumbered, the only source of reliable information is the Motor Vehicle Division in Nashville.

If the state legislature intended that an application for lien filed with the county clerk would serve to perfect the lien, then such would have been the wording of the statute. The state legislature chose instead to make exclusive reference to perfection by the "division." The county clerk is merely the first step. The legislature realized the critical timing involved in perfecting a lien with the Motor Vehicle Division and protected lienholders from delays in the county clerk's office by requiring the county clerk to forward the lienholder's application on the date received[9] or face a graduated series of penalties.[10] A reasonably dil-

9. Tenn.Code Ann. § 55–6–105 (repl. vol. 1980) provides:

    Duties of county clerk—Penalties for delinquencies.—(a) In addition to the powers and duties heretofore devolved upon the county clerk, it shall be his duty to:

    (5) Forward all applications for certificates of title received by him, together with the proper fee therefor and the original copy of the certificate of registration or transfer certificate of registration issued by him to the division on the same day on which the said applications shall be filed with him and the certificate of registration or transfer certificate of registration issued by him . . .

The statutory requirement that applications be forwarded on the same day does not satisfy the defendant's burden of proof to indicate when the application was received by the Motor Vehicle Division. The statute does not indicate the manner in which the application must be forwarded. Delays in the mail or other transport would clearly put the date of perfection outside the required 10-day period.

10. Tenn.Code Ann. § 55–6–105 (repl. vol. 1980) provides:

    (b) If any county clerk shall be delinquent as much as two (2) days in forwarding the applications for certificate of title, the original copies of the certificates of registration, transfers of registration and surrenders of registrations to the division, or as much as ten (10) days in making the report herein-

igent creditor, one who does not wait until the 10th day to begin to perfect its security interest, will be adequately assured of protection.

Miracle Motors has completely failed to meet its burden of proof regarding the date of perfection. Although the proof reveals that an application for title and notation of lien was made April 22, 1982, the court will not speculate as to when the application was finally received by the Division of Motor Vehicles. It is sufficient to state that the defendant has not demonstrated that the date of receipt by the Motor Vehicle Division was within the requisite 10-day period.[11]

The debtors' $930.75 in prepetition payments is also recoverable by the trustee as preferential transfers. Miracle Motors presented no proof that it was entitled to have the payments excepted from the trustee's avoiding powers.[12] The payments were transfers of the debtors' property within the 90 days preceding bankruptcy. The payments, made on account of an antecedent debt, were for the benefit of Miracle Motors and enabled it to receive a larger share than it would have if the estate were liquidated and the transfer had not been made. Miracle Motors has not contested the presumed insolvency of the debtors.

Accordingly, the court finds that the transfer is not excepted from avoidance under 11 U.S.C.A. § 547(c)(3) and, therefore, the automobile and the $930.75 in prepetition payments shall be turned over to the trustee for administration.

An appropriate order will be entered.

above required to be made to the department of revenue, he shall be guilty of a misdemeanor and shall be fined not less than two dollars and fifty cents ($2.50) nor more than fifty dollars ($50.00) for each day he shall have been delinquent. If any clerk be delinquent as much as ten (10) days in making the remittance required under the provisions of subdivision 7 hereof there shall be added to the amount of the remittance due a penalty of five percent (5%) of such amount, except that the commissioner shall have the authority to waive the penalty or relieve the clerk of payment of the amount of the penalty.

11. The failure in the defendant's proof is further exacerbated by the absence of evidence bearing on the date of attachment. Miracle Motors did not prove the date of delivery of the automobile. Again, the court is left to speculate as to when the 10-day period in § 547(c)(3)(B) commenced.

12. Miracle Motors did not plead or prove that it was entitled to protection of the payments pursuant to § 547(c)(2).